IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LAMAR WRIGHT,**<br>c/o Friedman and Gilbert<br>55 Public Square, Suite 1055<br>Cleveland, Ohio 44113,<br><br>*Plaintiff*,<br><br>vs.<br><br>**CITY OF EUCLID,**<br>545 E. 222nd St.<br>Cleveland, OH 44123<br><br>-and-<br><br>**Euclid Police Officer**<br>**KYLE FLAGG, #61,**<br>545 E. 222nd St.<br>Cleveland, OH 44123<br><br>-and-<br><br>**Euclid Police Officer**<br>**VASHON WILLIAMS, #9,**<br>545 E. 222nd St.<br>Cleveland, OH 44123<br><br>*Defendants*. | CASE NO.: _____<br><br>JUDGE: _____<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is a civil rights action. This case addresses constitutional violations committed against Plaintiff Lamar Wright.

2. In the early evening of November 4, 2016, Plaintiff Lamar Wright was driving in Euclid, Ohio. He was recovering from recent surgery and had a colostomy bag placed at his lower abdomen. During his drive, Wright pulled over into a nearby driveway in order to safely use his cell phone to contact his girlfriend. Suddenly, two men appeared at his car doors and tried to yank

1

them open. Wright saw a gun in the hand of at least one of the men. He feared that they were carjackers, but soon realized they were police.

3. Defendants Police Officers Kyle Flagg and Vashon Williams, of the Euclid Police Department, stopped, searched, and seized Wright without reasonable suspicion or probable cause, accusing him of wrongdoing because he responsibly decided to park his car before using his phone.

4. During the course of this illegal seizure, without provocation or cause, Defendant Flagg grabbed and twisted Wright's arm, and discharged his Taser at Wright's stomach area. At the same time, Defendant Williams discharged pepper spray into Wright's eyes, nose, and mouth. Wright was seated during this vicious and unprovoked attack.

5. Wright was falsely and maliciously charged with Obstructing Official Business, Resisting Arrest, and Criminal Trespass. Wright was also issued a traffic citation for driving under suspension, driving without headlights on, and failing to use a turn signal.

6. After facing prosecution for over seven months, all charges were finally dismissed. Wright was not convicted of any crime in relation to the events giving rise to this case.

7. Defendant Officers Flagg and Williams are responsible for the trauma, injuries, and damages suffered by Wright as a result of the Defendants' brutality and illegal actions.

8. Further, the City of Euclid, Ohio, is also liable for Wright's trauma, injuries, and damages. The Euclid Police Department's unconstitutional policies, practices, and customs are the moving force behind its officers' use of excessive and unconstitutional force against too many people, in particular African Americans, including Lamar Wright.

9. Wright seeks damages and other relief under federal law for unreasonable search and seizure, and for malicious prosecution, and under state law for willful, wanton, and/or reckless conduct, for malicious prosecution, and for intentional infliction of emotion distress.

**JURISDICTION AND VENUE**

10. The Jurisdiction of this Court is invoked pursuant to the Constitution of the United States and the Civil Rights Act, 42 U.S.C. § 1983, et seq. This action arises under the laws of the United States, and jurisdiction is conferred on this Court under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Supplemental jurisdiction of the Court over the claims arising under state law is invoked under 28 U.S.C. § 1367 (supplemental jurisdiction).

11. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

**PARTIES**

12. Plaintiff Lamar Wright is a resident of Cuyahoga County, Ohio.

13. Defendants Flagg and Williams were, at all times relevant hereto and in all their actions described herein, duly-appointed police officers employed by the City of Euclid.

14. At all times relevant hereto and in all their actions described herein, Defendants Flagg and Williams acted under color of law and pursuant to their authority. They are sued in their individual capacities.

15. At all times relevant hereto and in all their actions described herein, Defendants Flagg and Williams acted within the scope of their employment and in the performance of their official duties.

16. Defendant City of Euclid is a municipal corporation, duly incorporated under the laws of the State of Ohio, is the employer and principal of Defendants Flagg and Williams, and is responsible for the policies, practices, and customs of its Police Department.

**FACTS**

17. On October 12, 2016, Lamar Wright suffered from an episode of acute diverticulitis and visited Cleveland Clinic Euclid Hospital for treatment.

18. Subsequently on October 22, 2016, Wright's doctors performed a colostomy placement. Wright was discharged from the hospital with a colostomy bag which was meant to stay attached to his lower abdomen for the next six months.

19. On the afternoon of Friday, November 4, 2016, while driving down East 212th Street, Wright pulled into a residential driveway to safely use his cell phone.

20. It was then that Wright saw a man dressed in dark-colored street clothes and a baseball cap, which hid his face, at his passenger side door, yanking on the handle.

21. Wright feared that he was about to become the victim of a robbery or carjacking. Wright shifted the car into reverse.

22. He then saw another man, also dressed in dark-colored street clothes and a hat, come up to his driver-side door, and then start yanking on the handle.

23. Wright saw that at least one of these men was armed as they tried to break into his car.

24. Just as Wright was about to take his foot off of the brake, he heard the men yell commands at him, and saw a flashlight shining into his vehicle. Wright realized they were police. He did not take his foot off the brake, and instead, he immediately put the car in park. Wright unlocked the doors, and in a fearful state, Wright put his hands up.

25. The plain-clothed man, later identified as Defendant Flagg, at the driver-side of the vehicle opened the car door. Flagg's gun was raised and pointed toward Wright.

26. The other man, later identified as Defendant Williams, came around the vehicle and stood behind Flagg. Williams, too, raised and pointed his gun at Wright. Wright continued to hold his hands up, as illustrated below in Figure 1.



Figure 1

27. Defendant Flagg ordered Wright to shut the car off. Wright immediately complied, extending his left arm out toward Flagg, who stood in the door well of the car, as Wright used his right hand to shut the car off.

28. Without first giving Wright an opportunity to exit the vehicle, Defendant Flagg grabbed Wright's left arm.

29. After shutting the car off, Wright put his right hand up in the air again in an attempt to comply with officers' orders.

30. Defendant Flagg yanked on Wright's left arm. Wright was still seated in the car at this time, and had staples in his stomach and a new colostomy bag. This, in combination with Flagg yanking on his left arm, prevented Wright from extending his right arm toward Flagg.

5

31. Defendant Flagg's conduct caused Wright extreme pain. Wright cried out to Flagg several times that he was hurting his arm, but Flagg ignored him.

32. Wright was terrified that, by twisting his body in the car seat, Defendant Flagg's actions might severely damage his colostomy bag and the surrounding tissue and organs.

33. Wright began to tell Defendants that he had a colostomy bag, but before he could finish his sentence, both Defendants Flagg and Williams simultaneously used excessive force against Wright in a vicious and unprovoked attack.

34. Defendant Flagg discharged his Taser and its prongs connected to the left side of Wright's lower abdomen, not far from where his colostomy bag had been placed.

35. At the same time, Defendant Williams reached his hand inside of the vehicle and discharged pepper spray into Wright's face at close range.

36. Each Defendant had the duty and opportunity to intervene to protect Wright, and to prevent the unconstitutional use of force against Wright. Neither Flagg nor Williams did anything to prevent this unlawful attack.

37. Defendants Flagg and Williams ordered Wright to get onto the ground. He complied by getting onto the ground and lying on his stomach, despite immense pain in his abdomen.

38. Coughing and sputtering from the pepper spray in his mouth and nose, Wright again told Defendants that he was wearing a colostomy bag. Defendant Williams ordered him to put his hands behind his back, to be handcuffed. He complied immediately.

39. At no point did Lamar Wright resist arrest.

40. Defendants Flagg and Williams had no reasonable suspicion or probable cause to seize Wright.

6

41. The entire incident was captured on officers' body cameras. (Video available at https://youtu.be/h8t3OAkRLkg.)

42. Defendants removed the taser prongs from Wright's body.

43. Defendants did not provide appropriate eye flushing or washing after discharging pepper spray onto Wright's person. The only care he was given at the scene was a small amount of water poured over his eyes. The burning from the pepper spray did not abate.

44. Defendants charged Wright with Obstructing Official Business, Resisting Arrest, and Criminal Trespass. Wright was also issued a traffic citation for driving under suspension, driving without headlights on, and failing to use a turn signal.

45. Defendants jointly agreed and/or conspired with each other to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of events to their superiors, prosecutors, and the public, in order to cover up their own misconduct.

46. Wright was taken to a hospital for assessment of injuries.

47. While in the hospital, Defendants mocked Wright for the pain he continued to suffer in relation to the pepper spray remaining on his skin.

48. Wright was still not provided with adequate wash to remove the pepper spray from his person.

49. After being discharged from the hospital, Wright was then taken to jail.

50. Wright had to pay nearly $900 in bond in order to be released from jail after his illegal arrest.

51. However, after posting bond, Wright was not released from custody. Instead, his detention was extended without lawful justification. He was transported to the Cuyahoga County Jail, where he was subjected to a search via a full-body x-ray scanner.

52. Only after this scanning was complete, approximately four to five hours after bond had been posted, was Wright finally permitted to walk free.

53. The pepper spray remained on his skin from the time he was initially sprayed, at approximately 5:30 PM, until around 3 AM the next morning, when the poison control hotline advised that he pour milk on his body. Wright suffered pain for the duration of that nearly 10-hour period.

54. Defendants filed a criminal complaint in the Euclid Municipal Court against Wright for Obstructing Official Business, Resisting Arrest, and Criminal Trespass, in case number 16CRB01477.

55. Defendants also issued a traffic citation to Wright for driving under suspension, driving without headlights on, and failing to use a turn signal, in case number 16TRD04136.

56. Wright faced prosecution for over seven months.

57. On June 21, 2017, prosecutors finally dismissed all charges against Wright related to these events. Wright was not convicted of any crime in relation to the events giving rise to this case.

58. Wright has sustained permanent and severe physical and psychological injuries as a result of the actions of Defendants Flagg and Williams.

59. At the time of his arrest, Wright suffered various bodily injuries, including bleeding around his colostomy bag and pain from pepper spray.

60. Pepper spray residue also contaminated his rental car. As a result, Wright incurred a $1,000 cleaning fine from the car rental company.

61. Because Euclid Police officers towed and impounded the vehicle, Wright was unable to drive it for the rest of his rental period.

62. As a result of these events, the rental company placed Wright on a "Do Not Rent" list, and refuses to do future business with him.

63. In violating Wright's constitutional rights, Defendants engaged in willful, wanton, reckless, and/or negligent conduct. This unconstitutional conduct and willful, wanton, reckless, and/or negligent conduct was the direct, actual, and proximate cause of Wright's injuries.

64. As a direct and proximate result of said Defendants' conduct, either individually and/or collectively, Plaintiff suffered and continues to suffer lasting injuries including, *inter alia*, physical pain and harm, and serious and severe mental, emotional, and psychological injuries and damages.

65. The injuries suffered by Wright were all preventable, had Defendants not engaged in unconstitutional conduct in violation of his fundamental rights.

66. Upon information and belief, the City of Euclid has failed to effectively investigate or impose any discipline on Defendant police officers for their illegal behavior.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Unconstitutional Search and Seizure

67. All of the foregoing paragraphs are incorporated as though fully set forth here.

68. The actions of Defendants Flagg and Williams, as alleged in the preceding paragraphs, violated Lamar Wright's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable searches and seizures, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in the complaint.

69. The actions of Defendants Flagg and Williams as alleged in this complaint were the direct and proximate cause of the constitutional violations set forth above and of Lamar Wright's injuries.

70. Defendants acted under color of law and within the scope of their employment when they took these actions.

71. As a direct and proximate cause of Defendants' misconduct, Wright suffered and continues to suffer injury and damages as set forth in this Complaint.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Malicious Prosecution

72. All of the foregoing paragraphs are incorporated as though fully set forth here.

73. In the manner described more fully above, Defendants Flagg and Williams, acting individually, jointly and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Wright, knowing there was no probable cause for the criminal prosecution.

74. The charges were terminated in favor of Wright.

75. Defendants accused Wright of criminal activity knowing those accusations to be without genuine probable cause.

76. Defendants made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

77. Defendants, acting individually, jointly, and in conspiracy with each other, deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Wright's substantive due process rights and in violation of the Fourteenth and Fourth Amendments to the United States Constitution.

78. Defendants acted under color of law and within the scope of their employment when they took these actions.

79. As a direct and proximate cause of Defendants' misconduct, Wright suffered and continues to suffer injury and damages as set forth in this Complaint.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Failure to Intervene

80. All of the foregoing paragraphs are incorporated as though fully set forth here.

81. As set forth in the foregoing paragraphs, Defendants Flagg and Williams had the opportunity, duty, and ability to intervene on behalf of Wright during the other Defendant's unconstitutional conduct described in this Complaint, but failed to do so and thereby caused the injuries to Wright as set forth above.

82. Defendants observed or had reason to know that constitutional violations would be used or were being used, and had both the opportunity and the means to prevent the harm from occurring.

83. Therefore, the acts of Defendants violated 42 U.S.C. § 1983.

84. Defendants acted intentionally, willfully, and/or in a reckless, wanton, gross or unreasonable manner.

85. As set forth in the foregoing paragraphs, Defendants violated Wright's constitutional rights, and caused the injuries set forth in this Complaint.

86. As a direct and proximate result of Defendants' conduct, Wright's suffered and continues to suffer injury and damages as stated in this Complaint.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Extended Detention

87. All of the foregoing paragraphs are incorporated as though fully set forth here.

88. Wright was charged with a series of misdemeanor crimes, taken to a hospital, taken to jail, and then his bond was posted.

89. However, upon bond being posted, Defendants caused Wright to not be brought before a judge or released from custody. Instead, Defendants caused Wright to be transferred to

another facility in downtown Cleveland, where he was subjected to a security scan. His detention was prolonged for approximately four to five hours.

90. The delay was unnecessary, and motivated to interfere with and/or retaliate against Wright's exercise of his lawful rights.

91. Defendants' holding Wright in custody for longer than necessary, and increasing the length of custody for an improper motive, violated his Fourth Amendment right to be free from an unreasonable seizure.

92. As a direct and proximate result of Defendants' conduct, Wright's suffered and continues to suffer injury and damages as stated in this Complaint.

## FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 *Monell* Policy Claim against Defendant City of Euclid

93. All of the foregoing paragraphs are incorporated as though fully set forth here.

94. The actions of Defendants Flagg and Williams, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Euclid and its Police Department.

95. The City of Euclid, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

96. Despite the facts and circumstances surrounding the arrest of Lamar Wright that clearly demonstrate that the actions of the Defendants Flagg and Williams were unreasonable and unlawful.

97. Upon information and belief, the City of Euclid has failed to effectively investigate or impose any discipline on Defendant police officers for their illegal behavior.

98. At all times material to this complaint, the Defendant City of Euclid and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Euclid police officers who engage in unjustified use of excessive and unreasonable force and malicious prosecution;

   b. the police code of silence;

   c. the encouragement of excessive and unreasonable force and malicious prosecution;

   d. the failure to properly investigate the use of excessive and unreasonable force and malicious prosecution against civilians, particularly African-Americans, by City of Euclid police officers;

   e. the failure to properly discipline, supervise, monitor, counsel and otherwise control City of Euclid police officers who engage in unjustified use of excessive and unreasonable force or malicious prosecution; and/or

   f. the failure to properly train and supervise City of Euclid police officers with regard to discharging weapons at civilians, particularly at African-Americans.

99. Recently, a slew of allegations of excessive force against Euclid police officers have arisen, some of which are captured on video.

100. The aforementioned de facto policies, practices, and customs of the Euclid Police Department include a pattern of acts of excessive use of force and malicious prosecution, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

101. The Euclid Police Department has engaged in little or no meaningful disciplinary action in response to this pattern of misconduct, thereby creating a culture or climate that members of the department can escape accountability with impunity.

102. This pattern is the moving force behind the conduct of the Defendant officers in searching, seizing, and prosecuting Lamar Wright, which was not an isolated incident of unconstitutional policing within the City of Euclid by its officers.

103. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

104. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

105. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

106. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury to Lamar Wright, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

107. But for the belief that they would be protected, both by fellow officers and by the City of Euclid Police Department, from serious consequences, Defendants Flagg and Williams would not have engaged in the conduct that resulted in the injuries to Lamar Wright.

108. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Lamar Wright, and therefore acted as the moving forces behind and the direct and proximate causes of the injuries to Lamar Wright.

### SIXTH CLAIM FOR RELIEF
**State Law Claim for Willful, Wanton and Reckless Conduct**

109. All of the foregoing paragraphs are incorporated as though fully set forth here.

110. Defendants Flagg and Williams failed to exercise due care, and acted with a malicious purpose and/or in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, including but not limited to unreasonable search and seizure and malicious prosecution against Lamar Wright.

111. Each of the individual Defendants, as set forth herein, engaged in negligent, reckless, and /or willful and/or wanton conduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq*.

112. Defendants acted under color of law and within the scope of their employment when they took these actions.

113. As a direct and proximate cause of Defendants' misconduct, Wright suffered and continues to suffer injury and damages as set forth in this Complaint.

## SEVENTH CLAIM FOR RELIEF
**State Law Claim for Malicious Prosecution**

114. All of the foregoing paragraphs are incorporated as though fully set forth here.

115. In the manner described more fully above, Defendants, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Lamar Wright without probable cause.

116. As a consequence of the criminal prosecution, Wright was unlawfully seized and deprived of liberty.

117. Wright's criminal prosecution was terminated in his favor when the case against him was dismissed.

118. The actions of Defendants were committed intentionally, maliciously, culpably, in bad faith, and/or in a willful, wanton, or reckless manner.

119. Defendants acted in reckless disregard of Lamar Wright's rights.

120. As a direct and proximate result of this malicious prosecution, Wright suffered injuries, including but not limited to, the loss of liberty, emotional distress, loss of reputation, and other damages as set forth in this Complaint.

121. Defendants acted under color of law and within the scope of their employment when they took these actions.

## EIGHTH CLAIM FOR RELIEF
**State Law Claim for Intentional Infliction of Emotional Distress**

122. All of the foregoing paragraphs are incorporated as though fully set forth here.

123. Defendants Flagg and Williams engaged in extreme and outrageous behavior as alleged in this complaint, and breached the standard of care.

124. Defendants Flagg and Williams intended such conduct to inflict severe emotional distress upon Lamar Wright and knew or should have known that their conduct would cause Lamar Wright severe and serious emotional distress.

125. Defendants' conduct did, in fact, cause such distress, including, *inter alia*, serious and severe mental, emotional, and psychological injuries and damages.

126. Defendants' conduct was so outrageous and extreme in degree as to go beyond all bounds of decency.

127. The mental anguish suffered by Wright as a result of Defendants' conduct is of a nature that no reasonable person could be expected to endure it.

128. As a direct and proximate result of Defendant police officers' outrageous conduct, Lamar Wright suffered and continues to suffer injury and damages as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Lamar Wright demands that judgment be entered in his favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial, for the violation of Plaintiff's rights;

B. Punitive damages in an amount to be determined at trial for the willful, wanton, malicious, and reckless conduct of Defendants;

C. Declaratory and injunctive relief against the City of Euclid enjoining policies, practices, and customs shown to encourage the use of excessive and unreasonable force and malicious prosecution against civilians, particularly African-Americans, and ordering the institution of policies, procedures, and training for the Euclid Police Department to bring them into compliance with constitutional standards;

D. Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. Section 1988; and

E. All other relief which this Honorable Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

>
> Respectfully submitted,
>
> */s/Jacqueline C. Greene*
> JACQUELINE C. GREENE (0092733)
> SARAH GELSOMINO (0084340)
> TERRY H. GILBERT (0021948)
> FRIEDMAN & GILBERT
> 55 Public Square, Suite 1055
> Cleveland, OH 44113-1901
> Tel:   (216) 241-1430
> Fax:   (216) 621-0427
> Email: tgilbert@f-glaw.com
>           sgelsomino@f-glaw.com
>           jgreene@f-glaw.com
>
> *Attorneys for Plaintiff Lamar Wright*