**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF THE CASE...............................................................................2

        A.      Background regarding Officer Flagg and Officer Williams. ...................2

        B.      Background regarding the City of Euclid and the Cuyahoga County Jail..............3

        C.      November 4, 2016 temporary investigative stop and arrest of Plaintiff. .................4

III.    SUMMARY JUDGMENT STANDARD. ..........................................................11

IV.     LEGAL ANALYSIS..............................................................................................11

        A.      Plaintiff cannot establish a viable §1983 federal claim. ........................11

                1.      The federal claims are not properly asserted under the Fourteenth
                        Amendment........................................................................................ 11

                2.      The Officers had reasonable suspicion to initiate the temporary
                        investigative stop that resulted in Plaintiff's arrest and search and,
                        therefore, the Fourth Amendment was not violated................................. 11

                3.      The Officers' use of force did not violate the Fourth Amendment.......... 14

                4.      There is no viable federal malicious prosecution claim............................ 18

                5.      The failure to intervene claim is not viable. ............................................ 21

                6.      The extended detention claim is not viable.............................................. 21

        B.      The Officers are entitled to qualified immunity on all federal claims..................22

        C.      The *Monell* claim fails as a matter of law...............................................24

        D.      The state law claims fails as a matter of law. .......................................26

                1.      The state law malicious prosecution claim fails on the merits. ............... 26

                2.      The intentional infliction of emotional distress claim fails on the
                        merits................................................................................................... 26

                3.      Euclid is entitled to R.C. Chapter 2744 immunity on all state law
                        claims. .................................................................................................. 27

                4.      The Officers are entitled to 2744 immunity on all state law claims. ........ 29

V.      CONCLUSION......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Williams* (1972), 407 U.S. 143 ................................................................... 12

*Adityanjee v. Case W. Res. Univ.* (2004), 156 Ohio App.3d 432, 2004-Ohio-1109.................. 30

*Ahlers v. Schebil* (6th Cir.1999), 188 F.3d 365 ...................................................... 23

*Albright v. Oliver* (1994), 510 U.S. 266 ............................................................ 11

*Amerson v. Waterford Twp.*, 562 F.App'x 484 (6th Cir.2014) ........................................ 21

*Anderson v. Massillion*, 134 Ohio St.3d. 380, 2012-Ohio-5711 ..................................... 29

*Arrington-Bey v. Bedford Heights*, 858 F.3d 988, (6th Cir.2017) ............................... 24, 25

*Ash v. Ash* (1995)*, 72 Ohio St.3d 520 ......................................................... 19, 26

*Barrett v. Steubenville City Schools,* 388 F.3d 967 (6th Cir.2004) ................................ 22

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397 (1997) .............................. 24, 25

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir.1994) ............................................ 25

*Boykin v. Van Buren Twp.* (C.A.6, 2007), 479 F.3d 444 ............................................. 30

*Broadnax v. Green Credit Service* (1997), 118 Ohio App.3d 881 ................................ 19, 26

*Caldwell v. Moore*, 968 F.2d 595 (6th Cir.1992)................................................... 17

*Canton v. Harris*, 489 U.S. 378 (1989).......................................................... 24, 25

*City of Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978).................................. 24, 25

*Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560 ....................................... 28

*Cook v. Cincinnati* (1995), 103 Ohio App.3d 80 ................................................... 29

*Criss v. Springfield Township*, 56 Ohio St.3d 82 (1990) .......................................... 21

*Dayton v. Erickson* (1996), 76 Ohio St.3d 3 ...................................................... 13

*Dickerson v. McClellan* (6th Cir.1996), 101 F.3d 1151 ............................................ 22

*DiPasquale v. Hawkins*, -- Fed.Appx. -- 2018 WL 4944824 .......................................... 11

*Doe v. Dayton City School Dist. Bd. of Educ.* (1999), 137 Ohio App.3d 166......................... 27

*Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008).............................................. 12, 18

*Embody v. Ward*, 695 F.3d 577 (6th Cir.2012)..................................................... 14

*Estate of Dietrich v. Burrows* (6th Cir. 1999), 167 F.3d 1007 .................................... 11

*Frazier v. City of Kent*, 9th Dist. No. 2004-P-0077, 2005-Ohio-5413 .............................. 28

*Fridley v. Horrighs*, 291 F.3d 867 (6th Cir.2002) ................................................ 20

*Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763 (6th Cir.2006) ............................... 17

*Garrison v. Bobbitt* (1999)*, 134 Ohio App.3d 373................................................ 29

*Graham v. Connor* (1989), 490 U.S. 386 .................................................. 11, 14, 15, 18

*Griffits v. Newburgh Heights*, Eighth Dist. No. 91428, 2009-Ohio-493 ............................. 28

*Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir.2012)............... 16, 18, 24, 25

*Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 43 F.3d 1472 (6th Cir.1994)................... 20

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ...................................................... 23

*Harris v. U.S.*, 422 F.3d 322 (6th Cir.2005) ..................................................... 20

*Houston v. Clark Cty. Sheriff Deputy John Does 1–5*, 174 F.3d 809 (6th Cir.1999) ................. 16

*Howard v. Miami Twp. Fire Div.*, 119 Ohio St. 3d. 1 (2008)........................................ 27

*Hunter v. Bryant*, 502 U.S. 224 (1991)........................................................... 22

*Illinois v. Wardlow*, 528 U.S. 119 .............................................................. 14

*Lee v. Hefner*, 136 Fed.Appx. 807 ............................................................... 14

*LeFever v. Ferguson* (S.D.Ohio, 2013), 956 F.Supp.2d 819 .................................... 19, 26

*Los Angeles v. Heller*, 475 U.S. 796 (1986) .................................................................... 24

*Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir.2005) ........................................................ 14

*M.B. v. Elyria City Bd. of Educ.*, 9th App. Dist., 05CA008831, 2006-Ohio-4533 ...................... 29

*MacLeod v. Town of Brattleboro*, 548 Fed.Appx. 6 (6th Cir.2013) ........................... 17, 18

*Malcomb v. Dietz*, 487 Fed.Appx. 683 (3rd Cir.2012) ...................................................... 19

*Mayes v. Columbus* (1995), 105 Ohio App.3d 728 ........................................................... 29

*McGee v. City of Cincinnati Police Dept.* (S.D. Ohio, 2007), unreported, 2007 WL 1169374 ......................................................................................................... 16, 17, 18

*Miller v. Calhoun County,* 408 F.3d 803, 815 (6th Cir.2005) ............................... 24, 25

*O'Toole v. Denihan* (2008), 118 Ohio St.3d 374 .............................................................. 29

*Ohio v. Kates,* 169 Ohio App.3d 766, (2006) .................................................................... 20

*Ornelas v. United States* (1996), 517 U.S. 690 ................................................................. 12

*Peet v. Detroit*, 502 F.3d 557 (6th Cir.2007) ..................................................................... 24

*Pierce v. Woyma* (1997), 8th Dist. No. 97545, 2012-Ohio-3947 ...................................... 29

*Plumhoff v. Rickard,* 572 U.S. 765, (2014) ........................................................................ 23

*Pray v. Sandusky*, 49 F.3d 1154 (6th Cir.1995) ................................................................ 22

*Radvansky v. City of Olmsted Falls,* 395 F.3d 291 (6th Cir.2005) ................................... 16

*Saucier v. Katz*, 533 U.S. 194 (2001) ................................................................................ 22

*Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681 (6th Cir.2006) ..................... 17, 18

*Spurlock v. Satterfield,* 167 F.3d 995 (6th Cir.1999) ........................................................ 11

*Stanton v. Sims*, 571 U.S. 3 (2013) .................................................................................... 23

*State v. Baker*, 4th Dist. No. 16CA30, 2018-Ohio-762 ...................................................... 13

*State v. Carey*, 4th Dist. Ross No. 11CA3286, 2013–Ohio–1855 ...................................... 13

*Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir.2007) .......................................... 24

*Terry v. Ohio,* 392 U.S. 1 (1968) ....................................................................................... 12

*Thacker v. Columbus,* 328 F.3d 244 (6th Cir. 2003) ......................................................... 26

*Turner v. Scott*, 119 F.3d 425 (6th Cir.1997) .................................................................... 21

*U.S. v. Arvizu*, 534 U.S. 266 (2002) .................................................................................. 12

*U.S. v. Garza* (1993) 10 F.3d 1241 (6th Cir.2012) ...................................................... 12, 13

*U.S. v. Hensley*, 469 U.S. 221 (1985) ............................................................................... 12

*U.S. v. Knox*, 839 F.2d 285 (6th Cir.1988) ....................................................................... 12

*U.S. v. Lyons*, 687 F.3d 754 (6th Cir.2012) ................................................................. 12, 13

*U.S. v. Richardson*, 40 Fed.Appx 7, 13 (6th Cir.2002) ..................................................... 15

*U.S. v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) ............................. 22

*U.S. v. White*, 53 F.3d 332, at 4 (6th Cir.1995) ................................................................ 15

*United States v. Williams*, 271 F.3d 1262 (10th Cir.2001) ............................................... 13

*United States v. Winfrey*, 915 F.2d 212 (6th Cir. 1990) ................................................... 21

*Vasquez v. Hamtramck*, 757 F.2d 771 (6th Cir.1985) ...................................................... 19

*Walsh v. Village of Mayfield*, 11th Dist. No. 92309, 2009-Ohio-2377 .............................. 27

*West v. Duncan*, 76 Fed.Appx. 686 (6th Cir.2003.) .......................................................... 14

*Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir.2007) ......................... 15, 18

*Williams v. Ingham*, 373 Fed.Appx. 542 (6th Cir.2010) ................................................... 17

*Williams v. Leatherwood*, 258 Fed.Appx. 817 (6th Cir.2007) .......................................... 21

*Williams v. Sandel,* 433 Fed.Appx. 353 (6th Cir.2011) ............................................... 17, 18

*Yeager v. Local Union 20* (1983), 6 Ohio St.3d 379 ......................................................... 26

*Young v. Cty. of Fulton*, 160 F.3d 899 (2d Cir.1998) ....................................................... 24

iii

**Statutes**

R.C. 2744.01(C)(2)(a)(b) and (i)................................................................................................. 28

**BRIEF IN SUPPORT**

## I.    INTRODUCTION

Plaintiff Lamar Wright's claims arise from a November 4, 2016 temporary investigative stop and his subsequent arrest, effectuated by Defendant Euclid Police Officers Kyle Flagg and Vashon Williams.  The investigative stop was initiated after the Officers observed Plaintiff stop his rental vehicle at a residence they were surveilling due to high drug activity.  Plaintiff was arrested after failing to comply with the Officers' orders and resisting arrest.

During the course of the stop and arrest, Plaintiff's actions – as perceived by the Officers – posed a serious threat to the Officers' safety.  These actions included Plaintiff placing the rental car in reverse while Officer Flagg was behind the car; repeatedly reaching his right hand down below the car's center counsel area despite multiple officer commands to stop; failing to comply with Officer Flagg's verbal orders while he was attempting to secure both of Plaintiff's hands; and pulling his right shoulder from Officer Flagg's grasp.  To control the scene and alleviate the potential dangers posed by Plaintiff's actions, Officer Flagg deployed his taser using a single shock and Officer Williams used a single three second spray of his O.C. spray.

Following the arrest the Officers called for and provided appropriate medical care for Plaintiff.  The Officers then transferred Plaintiff to the custody of the Cuyahoga County Jail and citations/complaints were issued.

The Complaint attempts to assert the following causes of action:  an alleged unreasonable search and seizure claim under the Fourth and Fourteenth Amendments to the United States Constitution via 42 U.S.C. 1983; a federal malicious prosecution claim purportedly in violation of the Fourth and Fourteenth Amendments via §1983; a state law claim of malicious prosecution; a federal claim for an alleged failure to intervene under the Fourth and Fourteenth Amendments via

1

§1983; a federal claim for an alleged extended detention under the Fourth Amendment via §1983; a *Monell* claim against Euclid; an alleged state law claim of willful, wanton, and reckless conduct against the Officers; and a state law claim of intentional infliction of emotional distress.

As will be established below, Plaintiff's claims fail as a matter of law for the following reasons:

- The Officers did not violate any provision of the United States Constitution.

- The Officers are entitled to qualified immunity on all federal claims.

- Plaintiff cannot establish *Monell* liability against the City of Euclid.

- The Officers and Euclid are entitled to R.C. Chapter 2744 immunity and a privilege as to all state law claims.

Based upon the foregoing, summary judgment is appropriate and Plaintiff's claims should be dismissed with prejudice.

## II.    STATEMENT OF THE CASE.

### A.    Background regarding Officer Flagg and Officer Williams.

Officer Flagg was appointed to the Euclid Police Department in 2013.  (Flagg Depo., portions attached as Ex. A, at p. 7.)  Prior to the at-issue incident, Officer Flagg received numerous hours of training, including specific training on Taser use and the Euclid Police Department's Taser policy.  (Id. at 88-89.)  In addition, Officer Flagg received training on securing an individual during a traffic stop while the individual is still in the vehicle.  (Id. at 72; 108-109.)  The training established that securing an individual while still inside a vehicle protects against the individual fleeing or resisting once outside of the vehicle.  (Id.)  Also, Officer Flagg received training on use of force.  (Affidavit of Lt. Houser, attached as Ex. B.)

Officer Williams was appointed to the Euclid Police Department in 2013.  (V. Williams Depo., portions attached as Ex. C, at p. 10.)  Officer Williams also received voluminous hours of

training, including specific training regarding use of O.C. spray.  (Id. at 86; 91-92;174; 183-184; 189.)  Officer Williams also received training on use of force.  (Aff. of Lt. Hauser, Ex. B.)

Officers Flagg and Williams were consistently partners and were assigned to the Community Response unit.  (Flagg Depo., Ex. A, at pp. 8-9; 210.)  As members of the Community Response unit, Officers Flagg and Williams were assigned by supervisors to high crime priority areas.  (Id.)  These high crime priority areas were identified through citizen complaints and detective investigations.  (Id.)

**B.      Background regarding the City of Euclid and the Cuyahoga County Jail.**

At all times, Euclid has had in place effective policies and procedures which protect constitutional rights and also provide appropriate supervision, training and discipline of police officers.  (Hauser Aff., Ex. B,)  Specifically, the police department's use of force policies provide clear and proper regulations relating to the appropriate degree of force to effect lawful objectives. (Id. *with Ex. 1 Use of Force Policy*.)  Use of force by a police officer results in the officer submitting a use of force report to be reviewed by supervisors.  (Id.)

The policies also provide proper guidance relating to use of Taser and O.C. spray.  (Id. *with Ex. 2 Pepperball policy* and *Ex. 3 Taser policy*.)  Furthermore, Euclid has effective policies relating to investigative stops and arrests.  (Id. *with Ex. 4 Arrest Policy*.)

In addition, the policies provide for police officer training.  (Id. *with Ex. 5 Training Policy*) The training establishes in-service training as well as outsourced training for current or future assignments.  (Id.)  The training includes basic training, in-service training, recertification classes, career development courses, legal updates and law enforcement seminars.  (Id.)

The policies also establish appropriate procedures for supervision, discipline and investigation of citizen complaints.  (Id. *with Ex. 6 Discipline Policy and Ex. 7 Citizen Complaint*

3

*Policy*.)  Citizen complaints are fully investigated and a final determination is made as to whether a departmental policy was violated.  (Id.)  Appropriate discipline is issued to a police officer in accordance with the departmental policy and the collective bargaining agreement.  (Id.)

Cuyahoga County owns and operates the jail located in Euclid.  (Murowsky Depo., portions attached as Ex. D., at pp. 37-38.)  Accordingly, once custody of an individual is transferred to the Cuyahoga County Jail located in Euclid, Cuyahoga County's Jail policies and procedures govern that individual's incarceration.  (Id.; Jaenke Depo., portions attached as Ex. E, at pp. 17-18; 20.)  Per the Cuyahoga County jail policies and procedures, an individual that has a reported medical issue will be transferred from Euclid to the Cleveland Cuyahoga County Jail for proper medical screening as there is no medical staff at the jail in Euclid.  (Jaenke Depo., Ex. E, at pp. 24, 34.)  Individuals transferred to the jail in Cleveland pass through a body scan as part of their intake.  (B. Williams Depo., portions attached as Ex. F, at pp.23-24.)

**C.**      **November 4, 2016 temporary investigative stop and arrest of Plaintiff.**

On November 4, 2016, Officers Flagg and Williams were assigned to provide surveillance of a high drug activity residence as part of the Community Response unit.  (Flagg Depo., Ex. A, at pp. 9-10.)  The high drug activity residence to be surveilled was located at 854 East 207th Street, Euclid Ohio.  (Id.)  Detective Alcantara of the Euclid Narcotics Unit requested surveillance of this residence based upon multiple arrests and complaints regarding drug activity.  (Id.)  Officer Williams was personally aware of several complaints of drug activity relating to this residence and had surveilled the house on a prior occasion.  (V. Williams Depo., Ex. C, at pp. 15-19.)  The Officers' supervisor approved the requested surveillance assignment.  (Id.)

Because the assignment required surveillance, the Officers were dressed in "plain clothes." (Id.)  Specifically, Officer Flagg's clothing included a baseball cap with an embroidered Euclid

4

Police Department shield on the front, a grey hooded sweat shirt with an outer carrier vest over it, and dark colored pants. (Flagg Depo., Ex. A, at pp. 11-14.) The outer carrier vest was dark blue, had a silver metal Euclid police badge on the front left chest, and had the word "Police." (Id.) Officer Flagg carried various police equipment along the bottom of his carrier vest, including his taser. (Id.) Another Euclid police badge was located on his front right hip, just next to his holster and police firearm. (Id.)

Officer Williams' attire consisted of a baseball cap, a long sleeved dark colored shirt with an outer carrier vest, and dark jeans. (V. Williams Depo., Ex. C, at pp. 20-21.) Officer Williams wore a metal Euclid Police Department badge on a necklace that hung outside of his clothing and his carrier vest. (Id.) Officer Williams also carried his police firearm, a taser, pepper spray, and other miscellaneous police equipment. (Id.)

On November 4, 2016, Plaintiff visited his aunt in Euclid. (Wright Depo., portions attached as Exhibit G, at p. 40.) At the time, Plaintiff was driving a rented silver Ford Edge. Plaintiff had recently had surgery which required sutures mid-chest and a colostomy bag. (Id. at 34-35.) He was wearing a shirt and jacket which completely covered the sutures and colostomy bag. (Id. at 64-65.)

Plaintiff left his aunt's house at around 6:00 p.m. and traveled to a nearby gas station. (Id. at 40-41.) He then proceeded down North Lakeland Blvd. and took a right onto East 207th Street. (Id. at 43-45, *with Defs. Depo. Ex. B, Aerial Map*.) Plaintiff turned into the high drug activity house being surveilled by the Officers to visit his friend Chris. (Id.; Flagg Depo., Ex. A, at pp. 15-16.) According to Plaintiff, he stopped briefly at the residence to say hello to Chris and then backed out of the driveway. (Wright Depo., Ex. G, at 44-45.)

During their surveillance, the Officers observed Plaintiff pull the Ford Edge into the 854 East 207th Street driveway.  (Flagg Depo., Ex. A, at pp. 15-16.)  The Officers were parked in an unmarked Chevy Tahoe across the street from the high drug activity residence.  (Id. at 24-25.)  The Ford Edge drove past some hedges which obscured their view of the vehicle.  (Id. at 16.)

While the Ford Edge was at the residence, Officer Flagg had a license plate registration check completed.  (Id. at 22.)  The registration check revealed that the Ford Edge was a rental vehicle.  (Id.)  After approximately one minute, Plaintiff began to exit the driveway.  (Id. at 16.; Wright Depo., Ex. G, at p. 46)

Officer Flagg and Williams testified that based upon their experience drug transactions often involve rental vehicles as it helps conceal the suspect's identity.  (Flagg Depo., Ex. A, at p. 23. V. Williams Depo., Ex. C, at p. 32)  In addition, the Officers testified that in their experience the short time span Plaintiff spent at the 854 address indicated a drug transaction had occurred.  (Flagg Depo., Ex. A, at 23; V. Williams Depo., Ex. C, at 32.)  These factors in conjunction with the information received from Detective Alcantara that the residence was a high drug activity house requiring surveillance provided them with a reasonable suspicion that a drug transaction had occurred.  (Flagg Depo., Ex. A, at 23; V. Williams Depo., Ex. C, at 32.)  As a result, the Officers followed Plaintiff as he travelled northbound on East 207th Street and contacted uniformed police officers in order to conduct a traffic stop.  (Flagg Depo. Ex. A, at pp. 24-25.)

The Officers testified that Plaintiff stopped at the intersection of East 207th Street and Recher Avenue, but failed to use his turn signal as he turned right onto Recher.  (Id. at 26-27; V. Williams Depo., Ex. C, at 35.)  Officer Williams also observed that Plaintiff had not properly activated his night-time vehicle lights.  (V. Williams Depo., Ex. C, at pp. 29-30.)  Plaintiff proceeded east on Recher Avenue until he reached the intersection of Recher and East 212th Street.

6

(Flagg Depo., Ex. A, at pp. 24-25.)  The Officers observed that Plaintiff did not use his turn signal while turning left onto East 212th Street.  (Id. at 29-30; V. Williams Depo., Ex. C, at p. 35.)  Plaintiff drove a short distance on East 212th Street and pulled into the driveway of a residence at 780 East 212th Street.  (Flagg Depo., Ex. A, at p. 32.)  Plaintiff drove the Edge up the driveway and parked the vehicle so he could check a text from his girlfriend.  (Wright Depo., Ex. G, at pp. 50-51.)

The Officers drove a short distance past the driveway and parked the Tahoe on the side of the street.  (Flagg Depo., Ex. A, at p. 34.)  Officers Flagg and Williams were concerned that the uniformed officers were still a distance from the scene and that the driver of the rental vehicle could spot them and flee or destroy evidence.  (Id. at 28; V. Williams Depo., Ex. C, at pp. 40-42.)  As a result, the Officers made the decision to approach the rental vehicle to talk with Plaintiff.  (V. Williams Depo., Ex. C, at pp. 40-42.)

As the Officers exited the Tahoe and approached the rental car, they both activated their body cameras.  (Id. at 51; Flagg Depo., Ex. A, at 39.)  The cameras operated on a 10 to 15 second delay and, therefore, did not immediately start recording the incident.  (Flagg Depo., Ex. A, at p. 31; V Williams Depo., Ex. C, at p. 51.)  Both Officers approached the rental car on foot while loudly and clearly stating police repeatedly.  (Flagg Depo., Ex. A, at pp. 40-41; V. Williams Depo., Ex. C, at pp. 47-51.)  Officer Williams approached the passenger side door, and Officer Flagg approached from the rear moving along the rear bumper toward the driver side.  (Flagg Depo., Ex. A, at pp. 39-40, *with Plaintiff's Depo. Ex. 1, Aerial Map*; V. Williams Depo., Ex. C, at pp. 47-51.)

Plaintiff testified that he was texting on his cell phone when he heard yelling and saw two men in dark clothing approaching the rental car.  (Wright Depo., Ex. G, at pp. 55-56.)  Afraid that he was being robbed, Plaintiff threw the car into reverse.  (Id.)  As Officer Flagg was at the rear driver side of the rental car he made eye contact with Plaintiff in the driver side mirror, and then

7

saw the car's reverse lights activate and move slightly backwards.  (Flagg Depo., Ex. A, at pp. 42, 44.)  At that moment, Officer Flagg also heard Officer Williams begin to yell.  (Id.)  Although he could not understand what Officer Williams was yelling, based upon his extensive work experience with Officer Williams, Officer Flagg perceived the yelling as indicating a danger.  (Id.)  As a result, concerned that Plaintiff posed a danger, Officer Flagg took out his firearm and pointed it at the driver side window.  (Id. at 45-46.)

As Officer Williams approached the passenger side window of the car, he looked in the car and saw Plaintiff drop his right hand down below the center console.  (V. Williams Depo., Ex. C, at p. 49-50, 56.)  This act caused Officer Williams to pull his firearm and yell "get out of there," "show me your hands," and "don't do it" as he was concerned Plaintiff was reaching for a weapon.  (Id.)  Plaintiff proceeded to bring his right hand back up and reach for the gear shift.  (Id. at 58.)  Officer Williams yelled "show me your hands" and Plaintiff dropped his right hand back down below the console which prompted Officer Williams to shout "show me your hands" again.  (Id. at 58-59.)  Plaintiff put his right hand back up, placed the car in park, reached toward the dashboard, and then put his hand back up.  (Id.)  At this point, Officer Williams re-holstered his firearm and ran around the back of the car to assist Officer Flagg.  (Id. at 72.)

Meanwhile, Officer Flagg approached the driver side door.  (Flagg Depo., Ex. A, at pp 48-49.)  He was unable to see inside the vehicle, but heard Officer Williams yelling which raised his level of concern.  (Id.)  Officer Flagg yelled to open the car door and began pulling up on the door handle.  (Id.)  Plaintiff placed the car in park which automatically unlocked the car doors.  Officer Flagg opened the door and Plaintiff put his hands up.  (Wright Depo., Ex. G, at pp. 60, 69 *with Defendants Depo. Ex. C, Notice of Man. Filing Flagg Body Camera Video*.)  Officer Flagg then immediately holstered his firearm.  (Id.; Flagg Depo., Ex. A, at p. 50.)

Based on his training, and in an attempt to control the situation, Officer Flagg grabbed Plaintiff's left wrist and tried to bring it behind Plaintiff's back.  (Flagg Depo., Ex. A, at pp. 51-52; *Defs. Depo. Ex. C, Video*.)  Plaintiff began saying you are hurting my arm.  (*Defs. Depo. Ex. C Video*.  See, also, *Transcript of Flagg Body Camera Audio attached to Defs. Depo. Ex. C at p. 2*.)  Officer Flagg yelled for Plaintiff to "let me see your hand" and grabbed the back right shoulder of Plaintiff's jacket in an attempt to gain control of Plaintiff's right hand.  (Id.)  Due to Plaintiff's hand movements, Officer Williams yelled "get out of there" and "show me your hands."  (Id.)

Plaintiff testified that due to his sutures it was difficult for him to comply with Officer Flagg's directions.  (Wright Depo., Ex. G, at pp. 60-61; 65-66.)  Specifically, Plaintiff stated that he was unable to bring his right hand back and that he had his right hand pushing down on the center console.  (Id.).

As Officer Flagg pulled on Plaintiff's back right shoulder, Plaintiff stated "I got a what's-name-on."  (*Defs. Depo. Ex. C, Video* and See, also, *Transcript of Flagg Audio at p. 2*.)  Officer Williams positioned himself behind Officer Flagg's right shoulder.  (V. Williams Depo., Ex. C, at pp. 71-72; 87.)  Officer Williams saw that Officer Flagg was having difficulty obtaining Plaintiff's compliance and saw Officer Flagg pulling on Plaintiff's back right shoulder.  (Id.)

Plaintiff's pushing down on the console caused him to pull his shoulder away from Officer Flagg.  (*Defs. Depo. Ex. C, Video*.)  Officer Flagg lost his grip and control of Plaintiff's right shoulder.  (Id.)  Officer Flagg then made the split-second decision to deploy his taser using a single five second shock.  (Id.)  At the same time, based on his observations, Officer Williams decided to use a single three second spray of his O.C. spray.  (Id.)

Plaintiff then complied with the Officers' directions to get out of the car and get on the ground.  (Id.)  The Officers handcuffed Plaintiff and helped him to his feet.  (Id.)  Officer Williams

obtained water and applied it to Plaintiff's face to help alleviate the effects of the spray.  (Id.)  Only one Taser barb made contact with Plaintiff's skin.  (Wright Depo., Ex. G, at p. 76.)  While sitting on the tailgate of his rental vehicle, Plaintiff told the Officers that he did not have a weapon in the car, but admitted that he was reaching for his cell phone during the incident.  (*Defs. Depo. Ex. C*, *Video*.  See, also, *Transcript of Flagg Audio* at pp. 5-6; See, also, Affidavit of V. Williams attached hereto as Ex. H, with attached *Notice of Man. Filing Williams Body Camera Video with attached Transcript of Williams Body Camera Audio* at p. 6.)

EMS responded and provided Plaintiff with care on the scene.  (Wright Depo., Ex. G, at pp. 77-78.)  Plaintiff was taken to the hospital for further care.  (Id.)  While transporting to the hospital, Plaintiff again stated that he was reaching for his phone.  (Id.)  While at the hospital, Plaintiff refused a CAT scan of his midsection and was released.  (Id. at 82.)  He was then transported to the Cuyahoga County jail in Euclid.  (Id. at 87-88.)

At the jail, the Officers turned custody of Plaintiff over to the Cuyahoga County Jail.  Neither Officer had any further contact with Plaintiff.  (Id.)  The jail performed an initial intake for Plaintiff.  (Id.)  Because of Plaintiff's recent surgery, he was transferred to the Cuyahoga County Jail in downtown Cleveland.  (Jaenke Depo., Ex. E, at pp. 24, 49-50, B. Williams Depo., Ex. F, at pp. 24-25.)

Plaintiff's cousin came to the Euclid Police Department and paid Plaintiff's bail.  (Wright Depo., Ex. G, at pp. 92.)  However, Plaintiff was transferred to the Cleveland jail before he was released.  (Id. at 94.)  Plaintiff went through a body scanner and went through additional medical processing.  (B. Williams Depo., Ex. F, at p. 29.)  Shortly thereafter, Plaintiff was released from the jail.  (Wright Depo., Ex. G, at p. 96.)  Plaintiff received traffic citations for failure to use his turn signal; failure to use lighted lights; and driving under a suspended license.  He also received

10

complaints for resisting arrest; obstruction of official business; and trespass. (Id. at p. 96; Flagg Depo., Ex. A, at p. 107, 147 *with attached Plaintiff Depo. Exs. 3 and 4*, Complaints/Citations and Ex. 6 Incident Report.) Ultimately, these citations/complaint were voluntarily dismissed without prejudice by the prosecutor. (See attached Ex. I, Certified Muni. Ct. Docket.)

## III.    SUMMARY JUDGMENT STANDARD.

The well-established summary judgment standard applies.

## IV.    LEGAL ANALYSIS.

### A.    Plaintiff cannot establish a viable §1983 federal claim.

#### 1.    The federal claims are not properly asserted under the Fourteenth Amendment.

Plaintiff attempts to assert his federal claims under both the Fourth and Fourteenth Amendments. However, the Fourth Amendment provides the explicit textual source of constitutional protection in relation to the claims of unreasonable search and seizure, failure to intervene, and extended detention. *Albright v. Oliver* (1994), 510 U.S. 266, 273, quoting *Graham v. Connor* (1989), 490 U.S. 386, 395. See, also, *Estate of Dietrich v. Burrows* (6th Cir. 1999), 167 F.3d 1007, 1013. Moreover, the federal malicious prosecution claim is to be evaluated under the Fourth Amendment rather than the Fourteenth Amendment. *DiPasquale v. Hawkins*, -- Fed.Appx. -- 2018 WL 4944824, at fn. 3, citing *Spurlock v. Satterfield,* 167 F.3d 995, 1006 (6th Cir.1999). Accordingly, the federal claims asserted under the Fourteenth Amendment are not viable and must be dismissed.

#### 2.    The Officers had reasonable suspicion to initiate the temporary investigative stop that resulted in Plaintiff's arrest and search and, therefore, the Fourth Amendment was not violated.

Here, Plaintiff's right to be free from an unreasonable seizure and search under the Fourth Amendment was not violated. The type of contact between the Officers and Plaintiff in this case

11

resulted first in a "Terry stop" or a temporary investigative stop and is based upon reasonable

suspicion. *Terry v. Ohio,* 392 U.S. 1 (1968). Per the United States Supreme Court:

> In *Terry* this Court recognized that a police officer may in appropriate
> circumstances and in an appropriate manner approach a person for purposes of
> investigating possible criminal behavior even though there is no probable cause to
> make an arrest. The Fourth Amendment does not require a policeman who lacks
> the precise level of information necessary for probable cause to arrest to simply
> shrug his shoulders and allow a crime to occur or a criminal to escape. On the
> contrary, *Terry* recognizes that it may be the essence of good police work to adopt
> an intermediate response. *Adams v. Williams* (1972), 407 U.S. 143, 145-47.

Whether there is a reasonable suspicion of a crime must be determined from the standpoint

of an objectively reasonable police officer, without reference to the actual motivations of the

individual officer involved. *Ornelas v. United States* (1996), 517 U.S. 690, 696.

An officer's reasonable suspicion is based upon an assessment of all circumstances known

to the officer. *U.S. v. Knox*, 839 F.2d 285, 290 (6th Cir.1988). The reasonable suspicion

assessment includes circumstances that may arouse suspicion only in an experienced police officer.

*Id.* See, also, *U.S. v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993). Indeed, in determining whether

there is reasonable suspicion to support a Terry stop, "officers are 'entitled to draw on their own

experience and specialized training to make inferences from and deductions about the cumulative

information available to them that might well elude an untrained person.'" *U.S. v. Lyons*, 687 F.3d

754, 763 (6th Cir.2012), quoting *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002).

Moreover, an officer's reasonable suspicion need not arise exclusively from his own direct

observations. *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). Rather, an officer's reasonable

suspicion can be derived from extrinsic sources such as informant tips, dispatch information, and

directions from other officers. *Id.* citing, *U.S. v. Hensley*, 469 U.S. 221, 231–32 (1985).

In this case, the Officers had been informed by Detective Alcantara, of the Narcotics Unit,

that the 854 East 207th Street residence required surveillance due to multiple arrests and complaints

12

related to drug activity. Also, Officer Williams had personal knowledge of complaints regarding drug activity at this residence and had surveilled the location on a prior occasion. Thus, the Officers were assigned to provide surveillance of the residence for drug related activity.

While providing the surveillance, the Officers saw Plaintiff's car enter the driveway of the 854 East 207th Street residence, determined it was a rental car, and then saw the car leave after only approximately one minute. Based on the Officers' training and experience, drug transactions often involve rental vehicles and happen within a short amount of time. Accordingly, the Officers formed an articulable and reasonable suspicion of a drug transaction based upon their knowledge of the residence having received a high level of drug activity complaints and arrests requiring surveillance; the presence of a rental car at the surveilled residence; and the rental vehicle only staying at the residence for approximately one minute. *Garza*, supra; *U.S. v. Lyons*, supra. *State v. Baker*, 4th Dist. No. 16CA30, 2018-Ohio-762, at ¶18 (stating courts have recognized that the use of a rental car is a common form of transportation for drug couriers and that the presence of a rental car contributes to reasonable suspicion), citing *State v. Carey*, 4th Dist. Ross No. 11CA3286, 2013–Ohio–1855, ¶ 24; *United States v. Williams*, 271 F.3d 1262, 1270–71 (10th Cir.2001). This reasonable suspicion, standing alone, provided an adequate basis for an investigative stop.

The Officers testified that as they followed Plaintiff they observed traffic violations relating to Plaintiff's failure to use his night-time lights and failure to use his turn signals. Observations of these traffic violations provided the Officers with a basis for a constitutionally valid pretextual Terry stop. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3.

However, such a pretextual stop was unnecessary as the Officers had already developed an articulable and reasonable suspicion for a temporary investigative stop, and Plaintiff had **voluntarily** stopped his rental car in the driveway of the 780 East 212th Street residence. Their

13

reasonable suspicion was further bolstered when Plaintiff placed the car in reverse during the Officers' approach. *Lee v. Hefner*, 136 Fed.Appx. 807, 811 (6th Cir.2005) (noting that a police officer's observation of a suspect's apparent attempt to flee contributes to reasonable suspicion), citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Plaintiff's claim that he placed the car in reverse because he initially did not recognize the Officers as police does not abrogate this additional support for reasonable suspicion. The Officers were unaware that Plaintiff did not recognize them as police at the time of the incident, and reasonable suspicion can only be premised upon the facts known to the Officers at the time of the stop. *Embody v. Ward*, 695 F.3d 577, 580 (6th Cir.2012).

Based upon the foregoing, the Officers had the requisite articulable and reasonable suspicions to proceed with a temporary investigative stop of Plaintiff. Furthermore, based upon Plaintiff's failure to comply with the Officers' orders and Plaintiff pulling his shoulder away from Officer Flagg, the resulting arrest was based upon probable cause. *Lyons v. City of Xenia*, 417 F.3d 565, 574-575 (6th Cir.2005). In addition, any search provided incident to the arrest was appropriate and did not violate the Fourth Amendment. *West v. Duncan*, 76 Fed.Appx. 686 (6th Cir.2003.)

For the aforementioned reasons, any seizure or search by the Officers was justified by reasonable suspicion and probable cause. Accordingly, Plaintiff cannot establish a Fourth Amendment violation in this regard.

### 3. The Officers' use of force did not violate the Fourth Amendment.

Claims of excessive force are to be analyzed under the Fourth Amendment's reasonableness standard. *Graham,* 490 U.S. at 395 (1989). When analyzing an officer's actions under the Fourth Amendment, the proper question is whether their actions were objectively

14

reasonable in light of the totality of the circumstances. *Id*. at 396-97. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

It is well-established that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of force or threat of force. *Graham* at 396. Importantly, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. Reasonableness relating to use of force must not be judged with 20/20 hindsight; rather, use of force must be judged from the perspective of a reasonable officer on the scene. *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir.2007). Accordingly, an officer's use of force must be based on the facts and circumstances known at the time the force is used. *Id*.

Based upon their observations, the Officers believed that Plaintiff was involved in illegal drug activity. Pursuant to the Officers' training and experience, illegal drug activity and the presence of guns/weapons generally go hand-in-hand. Indeed, the Sixth Circuit and Ohio district courts have concluded that when investigating potential drug activity a police officer can reasonably believe that the suspect is carrying a gun/weapon. *U.S. v. Richardson*, 40 Fed.Appx 7, 13 (6th Cir.2002) (noting that "Officers who rely on their experience and training in concluding that weapons are frequently used in drug transactions act reasonably when the officers use intrusive force to stop a drug suspect."); *U.S. v. White*, 53 F.3d 332, at 4 (6th Cir.1995) (finding that "[i]n light of the drug activity that was taking place at the house [where the officers found the defendant] and the common knowledge that individuals involved in buying and selling drugs often carry guns,

15

it was reasonable for the officers to fear that [the defendant] could be carrying a gun").  See, also, *McGee v. City of Cincinnati Police Dept.* (S.D. Ohio, 2007), unreported, 2007 WL 1169374, at 4.

Here, in light of the possible illegal drug activity and the potential presence of guns/weapons, the Officers briefly drew their firearms in response to observed circumstances. Specifically, Officer Flag drew his firearm after seeing the reverse lights of the rental vehicle activated while he was behind the car.  This indicated to Officer Flagg that Plaintiff was a flight risk and, therefore, represented an immediate danger to the Officers.  Officer Flagg immediately holstered his firearm once the driver side door was open and he could see Plaintiff's hands.

Officer Williams drew his firearm after observing Plaintiff reach down below the center console area of the rental car.  Under the circumstances, this action represented a serious potential danger to the Officers as this area is typically where guns/weapons are stored.  Officer Williams immediately holstered his firearm after he saw Plaintiff's hands up.  The Officers' brief display of their firearms under the circumstances does not represent excessive force and does not violate the Fourth Amendment.  *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 309 (6th Cir.2005), ("During a *Terry* stop, officers may draw their weapons *** 'so long as circumstances warrant that precaution.'" quoting *Houston v. Clark Cty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 815 (6th Cir.1999).

The single use of a Taser and O.C. spray was also reasonable under the circumstances. First, as to the single Taser shock, the Sixth Circuit has made clear that the use of a taser is objectively reasonable to gain control of a non-compliant suspect.  *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir.2012).  Indeed, a suspect's physical resistance or refusal to obey officer commands that preclude an officer from applying handcuffs provides an objectively reasonable basis to use a Taser.  *Id*.  See, also, *Williams v. Sandel,* 433 Fed.Appx. 353 (6th

16

Cir.2011); *Williams v. Ingham*, 373 Fed.Appx. 542, 548 (6th Cir.2010).  Taser use is also objectively reasonable when the suspect poses an actual or perceived threat of harm to the officer. *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir.1992).  *MacLeod v. Town of Brattleboro*, 548 Fed.Appx. 6, 8 (6th Cir.2013); *McGee* at 5.  Similarly, use of O.C. spray is objectively reasonable when a suspect is actively resisting or is failing to obey an officer's commands.  *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir.2006).  Also, if the suspect's actions pose a threat of harm to the officer or another then the use of O.C. spray is appropriate.  *McGee* at 5, citing *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 774-75 (6th Cir.2006).

Again, the observations of the Officers prior to the Taser and O.C. spray use provided a reasonable basis to believe that Plaintiff could be in possession of a gun/weapon and that he had attempted to flee.  Officer Williams had observed Plaintiff reach near the car's center console despite commands to show his hands and get his hands away from the console.  Officer Flagg's safety concerns were heightened by Officer Williams' yelling at Plaintiff.  Officer Flagg was attempting to gain control of Plaintiff's right hand to apply handcuffs while Plaintiff was still in the car.  In doing so, Officer Flagg was pulling on the back right shoulder area of Plaintiff's jacket. Plaintiff did not immediately comply with Officer Flagg's instruction to give him his right hand, and instead put his right hand down on the console and pushed up.  This caused Officer Flagg to lose his grip of Plaintiff's jacket.  Officer Williams observed Officer Flagg struggling to gain control of Plaintiff's right hand; Plaintiff's right hand near the center console area; and Officer Flagg lose his grip of Plaintiff's right shoulder.

As he lost his grip of Plaintiff's jacket, Officer Flagg made the split second decision to deploy his Taser and use a single shock to gain control and compliance of Plaintiff.  At the same time, based on his observations, Officer Williams used a single three second spray of his O.C.

spray to gain control of the scene.  In light of the aforementioned Sixth Circuit case law, the brief single use of a Taser and O.C. spray did not violate the Fourth Amendment as Plaintiff's actions were reasonably perceived as non-compliant active resistance.  These low levels of force were also reasonable in light of the suspected crime and perceived dangers posed by Plaintiff.  *Hagans*, *Sandel*, *MacLeod*, *Shreve*, *McGee*.

It is important to note that the Officers did not plan or intend to use force simultaneously. Rather, the simultaneous use of force occurred in response to the rapid events observed by the Officers which required contemporaneous split-second decision making.  Accordingly, the unintended simultaneous use of force does not render either Officers' decision to use force unreasonable. *Graham* at 396.

Further, Plaintiff's statements following the use of force that he was reaching for his phone, and that he could not comply with Officer Flagg's attempt to secure his right hand due to a recent surgery do not render the use of force objectively unreasonable.  It is undisputed that the Officers did not know that Plaintiff was reaching for his phone and did not know that Plaintiff's mobility and ability to comply with their orders was affected by a recent surgery.  Accordingly, the Officers' use of force was objectively reasonable based upon the facts and circumstances known to them at the time force was used.  *Williams* 496 F.3d at 486.  *Dorsey* at 399.  For these reasons, the force used did not violate the Fourth Amendment.

### 4.    There is no viable federal malicious prosecution claim.

Plaintiff's federal malicious prosecution claim under the Fourth Amendment cannot be sustained.  To succeed on a §1983 malicious prosecution claim, a plaintiff must prove: (1) the defendant made, influenced, or participated in the decision to criminally prosecute the plaintiff; (2) the prosecution lacked probable cause; (3) the plaintiff suffered a deprivation of liberty, apart

18

from the initial seizure, as a consequence of the legal proceeding; and (4) the criminal proceeding must have been terminated in the plaintiff's favor. *LeFever v. Ferguson* (S.D.Ohio, 2013), 956 F.Supp.2d 819.

First, Plaintiff cannot establish that criminal proceedings were terminated in his favor. Federal and Ohio Courts have held that "[a] proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." Id. at 840-841, quoting *Ash v. Ash* (1995)*,* 72 Ohio St.3d 520, 522. Accordingly, a prosecutor's decision to voluntarily dismiss without prejudice criminal charges is not a termination in a plaintiff's favor for a malicious prosecution charge. *Broadnax v. Green Credit Service* (1997), 118 Ohio App.3d 881, 888-889. Here, all of the criminal charges were voluntarily dismissed without prejudice by the prosecutor. Thus, the termination in favor element cannot be met and the federal malicious prosecution claim fails as a matter of law.

Plaintiff also cannot establish a federal malicious prosecution claim based on the traffic citations (failure to use turn signal; failure to use lighted lights; and driving under a suspended license) or the complaint for trespass. Plaintiff's seizure and arrest were not predicated upon these citations or the trespass complaint. Rather, Plaintiff's seizure was based solely upon his resisting arrest and obstruction charges. Accordingly, the traffic citations and trespass complaint cannot establish a liberty deprivation as required for a federal malicious prosecution claim. *Vasquez v. Hamtramck*, 757 F.2d 771, 773 (6th Cir.1985) (the inconvenience of defending the allegedly malicious prosecution does not represent a sufficient liberty deprivation). *Malcomb v. Dietz*, 487 Fed.Appx. 683, 685 (3rd Cir.2012).

That being said, the Officers had probable cause to arrest Plaintiff for resisting and obstruction, thereby precluding a federal malicious prosecution claim. A police officer has

19

probable cause if based on the circumstances known to the officer there is a "fair probability" that the suspect has either committed or intends to commit a crime. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002).  Under R.C. 2921.33 resisting arrest proscribes "recklessly or by force, [ ] resist[ing] or interfer[ing] with a lawful arrest of the person or another." Plaintiff's failure to comply with the Officers' orders and his physical resistance to Officer Flagg's attempt to handcuff – as thoroughly described above – establishes probable cause for the resisting arrest complaint. *Harris v. U.S.*, 422 F.3d 322, 329 (6th Cir.2005); *Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 43 F.3d 1472, at *15 (6th Cir.1994).

Moreover, pursuant to R.C. 2921.31(A), obstructing official business has five elements: (1) an act by the perpetrator; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the perpetrator so acts without privilege. *Ohio v. Kates*, 169 Ohio App.3d 766, (2006).  Again, Plaintiff's failure to comply with lawful orders of the Officers and physical resistance to Officer Flagg's attempt to handcuff him provided probable cause for the obstruction complaint.  Because there was probable cause for the resisting arrest and obstructing complaints, there is no Fourth Amendment violation and the malicious prosecution claim fails as a matter of law.

Furthermore, there was adequate probable cause for the traffic citations and trespass complaint.  The traffic citations were warranted as the Officers visually observed Plaintiff's failure to use his turn signal on multiple occasions and failure to use his night time lights; and a post arrest check of Plaintiff's driver's license revealed it was suspended.  (*See Plaintiff Depo., Ex. 4, Incident Report*.)  Likewise, following the arrest, both Officers spoke with the residents at 780 East 212th Street.  The residents informed the Officers that they did not know Plaintiff, had not given him

consent to park in their driveway, and did not want him on the property.  Accordingly, there was probable cause for the trespass complaint.  (Id.)

Finally, there is no evidence the Officers acted with malice.  "For purposes of malicious prosecution, malice means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Townshi*p, 56 Ohio St.3d 82 (1990).  Here, there is no evidence that the Officers acted with an improper purpose.  Rather, the complaints and citations were rationally based upon their observations and post incident investigation.  For this additional reason, there the malicious prosecution fails as a matter of law.

### 5. The failure to intervene claim is not viable.

A police officer may violate the Constitution if he fails to intervene when other officers use excessive force. *Amerson v. Waterford Twp.*, 562 F.App'x 484, 489 (6th Cir.2014). To establish a failure to intervene claim the plaintiff must prove that 1) the defendant officer observed or had reason to know that another officer would be or was using excessive force, and (2) the defendant officer had both the opportunity and the means to prevent the harm from occurring.  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997).

As established above there was no excessive force.  As a result, the failure to intervene claim fails as a matter of law.  Moreover, the force used was applied simultaneously, thereby precluding the elements of a failure to intervene claim from being met.  For this additional reason the failure to intervene claim fails as a matter of law.

### 6. The extended detention claim is not viable.

There is no per se time limitation for a detention that will cause it to be deemed unreasonable under the Fourth Amendment.  *Williams v. Leatherwood*, 258 Fed.Appx. 817, 822 (6th Cir.2007), citing *United States v. Winfrey*, 915 F.2d 212, 217 (6th Cir. 1990).  The length of

a detention may result in a Fourth Amendment violation if it involves a delay which was unnecessary to the legitimate investigation of the law enforcement officers. *U.S. v. Sharpe*, 470 U.S. 675, 687 (1985).

Here, it appears that Plaintiff's extended detention claim is based upon allegations of Plaintiff being transported from the Cuyahoga County Jail in Euclid to the Cuyahoga County Jail in Cleveland. However, it is undisputed that once the Officers transferred Plaintiff's custody to Cuyahoga County they no longer controlled or detained Plaintiff. Also, it is undisputed that Plaintiff's transport to Cleveland was based upon Cuyahoga County policies rather than any Euclid policy. Thus, Plaintiff's extended detention claim fails as a matter of law.

### B.    The Officers are entitled to qualified immunity on all federal claims.

The plaintiff bears the burden of establishing that an individual defendant is not entitled to qualified immunity. *Barrett v. Steubenville City Schools,* 388 F.3d 967, 970 (6th Cir.2004). To overcome qualified immunity, the plaintiff must show that: 1) a constitutional right has been violated; and 2) that at the time of the alleged violation case law clearly established that a reasonable official in the defendant's position should have known that their conduct would violate the constitution. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir.1995).

"The qualified immunity standard 'gives ample room for mistaken judgment' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). As stated by the United States Supreme Court, "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Thus, the qualified immunity analysis requires that only the facts known to the police officer at the time of the alleged violation are to be considered. *Dickerson v. McClellan* (6th Cir.1996), 101 F.3d 1151.

Section 1983 claims are limited by the qualified immunity exception, such that a police officer will be shielded from liability so long as the officer acted under the objectively reasonable belief that his or her actions were lawful.  *Ahlers v. Schebil* (6th Cir.1999), 188 F.3d 365, 372-373, citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815-819 (1982).  Thus, a successful §1983 claimant must establish that the defendant acted knowingly or intentionally to violate constitutional rights such that mere negligence or recklessness is insufficient.  *Ahlers* at 373; *Harlow* at 815.

As thoroughly established above, the Officers' actions did not violate any constitutional right.  Therefore, Plaintiff cannot establish the first prong of the qualified immunity analysis.

Moreover, Plaintiff cannot establish any clearly established law that would have alerted an officer that their conduct violated the constitution.  To demonstrate clearly established law, Plaintiff must point to case law that would demonstrate "beyond debate" that every reasonable officer in the position of the instant Officers would know their conduct violated the Fourth Amendment.  *Stanton v. Sims*, 571 U.S. 3, 5 (2013).  An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard,* 572 U.S. 765, (2014).

Here, there is no case law that would establish "beyond debate" that every reasonable officer in the position of Officers Flagg and Williams would have known that their actions were unconstitutional.  In fact, the case law cited above indicates quite clearly that their conduct *was* constitutional.  As a result, Plaintiff cannot show that the Officers were placed on notice via clearly established case law that their conduct under these specific circumstances violated the constitution.  For this additional reason, the Officers are entitled to qualified immunity.

**C.      The *Monell* claim fails as a matter of law.**

The *Monell* claims against Euclid fail as a matter of law.  First, because there was no constitutional violation, the *Monell* claims cannot be sustained.  In *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the Supreme Court held that if an individual defendant "inflicted no constitutional injury on [the plaintiff], it is inconceivable that [a local government] could be liable" for a §1983 *Monell* claim.  See, also, *Peet v. Detroit*, 502 F.3d 557, 566 (6th Cir.2007).  As established above, the Officers' conduct did not violate the Constitution.  Thus, per *Heller* and *Peet*, Plaintiff's *Monell* claims fail as a matter of law and should be dismissed.

The *Monell* claims also fail as a matter of law because the second prong of the qualified immunity defense – the clearly established law prong – was not proven by Plaintiff.  For the *Monell* claims, Plaintiff must show that either 1) Euclid had knowledge of an inadequate policy that caused the alleged constitutional violation and, despite a pattern of prior violations, Euclid continued to acquiesce to its implementation; or 2) there was a failure to train/supervise/discipline which caused the constitutional violation and such failure amounted to deliberate indifference.  *City of Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978); *Canton v. Harris*, 489 U.S. 378, 388, (1989); *Miller v. Calhoun County,* 408 F.3d 803, 815 (6th Cir.2005).

When the law is not clearly established, the plaintiff cannot show knowledge of and acquiescence to an inadequate policy; nor can the plaintiff show fault rising to deliberate indifference to training/supervision/discipline.  *Hagans,* 695 F.3d at 511; *Arrington-Bey v. Bedford Heights*, 858 F.3d 988, (6th Cir.2017); *Young v. Cty. of Fulton*, 160 F.3d 899, 904 (2d Cir.1998); *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir.2007); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410–411 (1997).  In this case, it cannot be shown that Euclid knowingly acquiesced to an inadequate policy or that it was deliberately indifferent to inadequate

24

training/supervision/discipline when there was no clearly established law confirming that the conduct complained of could result in a constitutional violation. *Hagans*; *Arrington-Bey*. For this additional reason, the *Monell* claims fail as a matter of law.

Further, Plaintiff must allege and prove that Euclid's policy, practice, or custom was the moving force behind the alleged constitutional deprivation. *Canton v. Harris*, 489 U.S. at 390-391; *Monell*, supra. Local government liability for the actions of employees may not be based on a theory of respondeat superior. *Berry v. City of Detroit*, 25 F.3d 1342, 1345, (6th Cir.1994). As stated above, Plaintiff must show Euclid had knowledge of an inadequate policy or practice that caused the alleged constitutional violation and, despite a pattern of prior violations, continued acquiescence to its implementation. *Monell*, supra; *Miller*, supra. Moreover, as noted above, to succeed on a *Monell* claim for an alleged failure to train/supervise/discipline, Plaintiff must show Euclid was "deliberately indifferent" to inadequate training, supervision, or discipline. *Bryan Cty.* at 397-398; *Canton*, 489 U.S. at 388-390.

The evidence affirmatively shows that at the time of, and prior to the incident, written policies regarding Tasers, O.C. Spray, arrests, use of force, and training/supervision/discipline of officers were in place. These policies adequately address the conduct of officers when confronted with circumstances regarding investigative stops, arrests, and force to seize an individual. Accordingly, the policies, practices or customs in effect at the time of the incident cannot be considered a moving force behind the alleged constitutional violation. For this additional reason, Plaintiff's *Monell* claims should be dismissed.

Further, there is no evidence of deliberate indifference as to training/supervision/discipline. As established above, the Officers received specific training on Euclid's use of force policy. When force is used, police officers fill out a use of force form to be reviewed by their supervisors. The

Euclid policies in conjunction with the collective bargaining agreement establish discipline for officers that violate departmental rules and regulations.  Accordingly, there is no evidence of deliberate indifference to inadequate training/supervision/discipline.  For this additional reason, Plaintiff's *Monell* claims should be dismissed.

>    **D.      The state law claims fails as a matter of law.**

>            **1.      The state law malicious prosecution claim fails on the merits.**

"Under Ohio law, '[t]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Thacker v. Columbus,* 328 F.3d 244, 260-261 (6th Cir. 2003).  First, as established above, the dismissal without prejudice of the criminal charges cannot demonstrate a termination of the prosecution in favor of the accused.  *LeFever* at 840-841, citing *Ash* at 522. See, also, *Broadnax* at 888-889.  Moreover, probable cause for all of the charges is present as demonstrated under the analysis of the federal malicious prosecution claim.  Finally, as shown by the federal malicious prosecution claim analysis, the Officers did not act with the requisite malice.  For these reasons, the state malicious prosecution claim fails as a matter of law.

>            **2.      The intentional infliction of emotional distress claim fails on the merits.**

The tort of intentional infliction of emotional distress requires the plaintiff to show that the defendant engaged in <u>extreme and outrageous conduct</u> that <u>intentionally or recklessly</u> caused <u>severe</u> emotional distress.   *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 379.   The outrageousness element is not satisfied by mere insults, threats, tortious conduct or even criminal conduct, but must be so outrageous or extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society.  *Id.*

Furthermore, a lack of evidence of malicious intent, in particular, suggests that a defendant's conduct did not reach the "extreme and outrageous" level set forth in *Yeager*.

There is no evidence establishing that the actions of the Officers can be considered extreme and outrageous conduct.  As established above, the Officers' actions were constitutional and, therefore, they are entitled to a privilege, thereby precluding the intentional infliction of emotional distress.  Moreover, the above has affirmatively established that the Officers' conduct was not made with any malicious intent.  Instead, the Officers' actions were based upon their observations and knowledge of the circumstances surrounding the November 4, 2016 incident.  Plaintiff also cannot establish severe emotional distress resulting from the brief interaction and low-level force used.  As a result, the intentional infliction of emotional distress claim fails as a matter of law.

> **3.      Euclid is entitled to R.C. Chapter 2744 immunity on all state law claims.**

Euclid, as a municipal corporation, is a political subdivision and is therefore entitled to R.C. Chapter 2744 immunity.  *Walsh v. Village of Mayfield*, 11th Dist. No. 92309, 2009-Ohio-2377, at ¶11.   Euclid's immunity can only be removed if Plaintiff can establish one of the five very limited exceptions listed at R.C. 2744.02(B).  *Howard v. Miami Twp. Fire Div.*, 119 Ohio St. 3d. 1, 4 (2008).  These five immunity exceptions are to be narrowly construed.  *Doe v. Dayton City School Dist. Bd. of Educ.* (1999), 137 Ohio App.3d 166, 169.  The exceptions set forth under R.C. 2744.02(B) relate to the following:

(1) injuries caused by the negligent operation of a motor vehicle;

(2) the negligent performance of acts with respect to a proprietary function;

(3) the negligent failure to keep public roads in repair and free of obstructions;

(4) negligence within or on the grounds of buildings used for governmental functions causing injuries due to physical defects; and

(5) when liability is expressly imposed upon the political subdivision by a section of the Revised Code.

Plaintiff cannot establish any immunity exception in the instant case.  None of his claims against Euclid relate to the negligent operation of a motor vehicle, negligent failure to keep roads in repair or negligence on the grounds of a public building due to a physical defect.  Also, there are no Ohio Revised Code provisions that expressly impose civil liability upon a political subdivision predicated upon the malicious prosecution or intentional infliction of emotional distress claims.

Furthermore, the Officers in this case were clearly engaged in the provision of law enforcement services and the enforcement of the law which are expressly defined as governmental functions and are thereby excluded by definition from the term "proprietary" function.  R.C. 2744.01(C)(2)(a)(b) and (i); *Frazier v. City of Kent*, 9th Dist. No. 2004-P-0077, 2005-Ohio-5413. Thus, the proprietary function immunity exception under R.C. 2744.02(B)(3) does not apply. Because none of the exceptions apply, Euclid is entitled to 2744 immunity on all state law claims.

Additionally, the state law claims represent intentional torts.  Ohio Appellate Courts have consistently held that political subdivisions are exempt from intentional tort claims, reasoning that the R.C. 2744.02(B) immunity exceptions only refer to negligence.  See, e.g., *Griffits v. Newburgh Heights*, Eighth Dist. No. 91428, 2009-Ohio-493; *Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560.  Thus, for this additional reason, none of the immunity exceptions apply and Elyria is entitled to immunity.

### 4.     The Officers are entitled to 2744 immunity on all state law claims.[1]

As employees of a political subdivision, the Officers are entitled to immunity under R.C. 2744.03(A)(6) with certain limited exceptions.  *Mayes v. Columbus* (1995), 105 Ohio App.3d 728. By its terms, R.C. 2744.03(A)(6) operates as a presumption of immunity.  *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90.  As with the subdivision itself, this presumption may only be overcome by demonstrating that an exception to immunity applies.  *M.B. v. Elyria City Bd. of Educ.*, 9th App. Dist., 05CA008831, 2006-Ohio-4533.

None of the exceptions apply in this case. The Complaint concedes that the Officers were acting within the scope of their employment.  (Compl. at ¶15.)  Therefore, the immunity exception listed at R.C. 2744.03(A)(6)(a) does not apply.   Also, the R.C. 2744.03(A)(6)(c) immunity exception does not apply because Plaintiff has not cited, and the Defendants are not aware of, any Revised Code provision that expressly imposes civil liability on the Officers.

Also, the exception to immunity under R.C. 2744.03(A)(6)(b) does not apply as there is no evidence of recklessness, wantonness, malice or bad faith.  "Bad faith" implies sinister motive and also refers to that which has "no reasonable justification."  *Pierce v. Woyma* (1997)*,* 8th Dist. No. 97545, 2012-Ohio-3947, at ¶15. "Malice" is defined as the willful and intentional design to harm another by inflicting serious injury without excuse or justification.  *Garrison v. Bobbitt* (1999)*,* 134 Ohio App.3d 373, 384.   "Wanton" misconduct refers to a failure to exercise any care whatsoever.  *Anderson v. Massillion*, 134 Ohio St.3d. 380, 2012-Ohio-5711, ¶33.  "Recklessness" is a perverse disregard of a known risk which requires the actor to be conscious that his conduct will in all probability result in injury.  *Id.* at ¶34.  *O'Toole v. Denihan* (2008)*,* 118 Ohio St.3d 374.

---

1. To the extent the Complaint attempts to assert a generic claim for reckless, wanton, and willful misconduct, Defendants assert that such claim is not viable and fails based upon the Officers' 2744 immunity analysis.

As established thoroughly above, the Officers did not act with the requisite level of mental culpability to establish reckless, wanton, or willful misconduct. Rather, the Officers acted appropriately and in furtherance of their duty as police officers to safeguard themselves and the public. Furthermore, as established above there was probable cause for the arrest, citations, and complaints. The Officers' detention and use of force under the circumstances was privileged as a matter of law and, therefore, cannot be considered reckless, wanton, or willful misconduct. See, e.g., *Adityanjee v. Case W. Res. Univ.* (2004), 156 Ohio App.3d 432, 2004-Ohio-1109, at ¶58 See, e.g., *Boykin v. Van Buren Twp.* (C.A.6, 2007), 479 F.3d 444, 452. Therefore, the R.C. 2744.03(A)(6)(b) exception also does not apply, and the Officers are entitled to immunity on all state law claims.

## V.    CONCLUSION

Based upon the foregoing, Plaintiff's federal and state law claims against Euclid, Officer Flagg, and Officer Williams fail as a matter of law. Therefore, summary judgment is appropriate and all claims stated against Defendants should be dismissed with prejudice.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/John D. Pinzone*
JAMES A. CLIMER (0001532)
JOHN D. PINZONE (0075279)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jclimer@mrrlaw.com
             jpinzone@mrrlaw.com

Of Counsel:    KELLEY SWEENEY (0068857)
                       City of Euclid Department of Law

30

585 East 222nd Street, Ste. 200
Euclid, OH  44123
(216) 289-2746
Email: ksweeney@cityofeuclid.com

Counsel for Defendants City of Euclid, Euclid
Police Officer Kyle Flagg, #61, and Euclid Police
Officer Vashon Williams, #9