IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAMAR WRIGHT,                                )    CASE NO.  1:17 CV 2503
                                             )
      Plaintiff,                            )
                                             )
v.                                           )    JUDGE DONALD C. NUGENT
                                             )
CITY OF EUCLID, *et al.*,                    )
                                             )
      Defendants.                           )    <u>MEMORANDUM OPINION</u>


      This matter is before the Court the Motion for Summary Judgment of Defendants, on City

of Euclid, Euclid Police Officer Kyle Flagg, and Euclid Police Officer Vashon Williams.  (ECF

#19).  Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment, and

the Defendants filed a Reply in support of their Motion for Summary Judgment.  (ECF #31, 42).

Having considered all of the submissions, and having reviewed the undisputed facts and

applicable law, this Court finds that Defendants' Motion for Summary Judgment should be

GRANTED.

**Facts and Procedural History**[1]

Plaintiff filed a Complaint raising the following claims: (1) Unlawful Search and Seizure of Property in violation of 42 U.S.C. § 1983 against the individual police officers; (2) Malicious Prosecution in violation of 42 U.S.C. § 1983 against the individual police officers ; (3) Failure to Intervene in violation of 42 U.S.C. § 1983 against the individual police officers; (4) Extended Detention in violation of 42 U.S.C. § 1983, against the individual police officers; (5) Monell Policy Claim against Defendant City of Euclid in violation of 42 U.S.C. § 1983; (6) State law claim for Willful, Wanton, and Reckless Conduct; (7) State law claim for Malicious Prosecution; (8) State law claim for Intentional Infliction of Emotional Distress.  The Defendants Answered the Complaint and seek Summary Judgment on the basis of qualified immunity, and Plaintiff's alleged failure to assert a viable federal or state claim.

The undisputed facts underlying this cause of action are as follows.  On November 4, 2016, around six p.m., officers Flagg and Williams were assigned to provide surveillance at a residence that had been the subject of complaints regarding suspected drug activity.  They witnessed Mr. Wright pull into the driveway.  Mr. Wright stayed in the driveway for about one minute, and, without getting out of his vehicle, spoke with one of the residents of the house who had been on the porch when he pulled in.  The conversation took place behind a hedge and outside the view of the two officers.  During this time, the officers ran a registration check on Mr. Wright's vehicle and discovered that it was a rental vehicle.

---

[1]

Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

The officers testified that based on their experience and training, the short visitation time at a residence associated with potential drug activity, combined with the use of a rental car created a reasonable suspicion that Mr. Wright may have been involved in a drug transaction. As a result, the officers followed Mr. Wright's vehicle after he pulled out of the targeted driveway. Shortly after leaving the driveway, Mr. Wright claimed to have received a text from his girlfriend and said he pulled into a driveway in order to respond. Mr. Wright claimed that the driveway belonged to an acquaintance of his, however, the resident who was questioned after the incident denied knowing Mr. Wright or giving him permission to be on the property.

Once Mr. Wright stopped in the driveway, the officers approached the car. Both officers had their weapons drawn when Mr. Wright first saw them. The officers were in plain clothes but wore police identification badges on lanyards around their necks. When Mr. Wright first saw Officer Williams approach the passenger side window with gun drawn, he claimed that he thought he was being robbed and he put the car into reverse. The car moved slightly if at all. Almost immediately, he saw Officer Flagg on the driver's side, recognized him to be a police officer, put the car in park, and put his hands up.

Officer Williams claims that he saw Mr. Wright reach down toward the center console three times. Mr. Wright admits in his Memorandum in Opposition that he reached down toward the console once in order to put the car in reverse, once to put the car in park, and a third time to turn the car off when directed to do so by Officer Flagg. When Officer Flagg tried to get control of Mr. Wright's hands, Mr. Wright concedes that he did not comply with Officer Flagg's order to show him his right hand. Rather, he claims that he had his right hand on the center console, pushing down, and that doing so caused him to pull his shoulder away from Officer Flagg.

-3-

When Mr. Wright pulled away, Officer Flagg lost his grip on Mr. Wright. Feeling that he was

losing control, and concerned that Mr. Wright's reach toward the console region could be an

attempt to access a weapon, Officer Flagg deployed his taser. Almost instantaneously, based on

the same assessment of the potential danger of the situation, Officer Williams, who by now was

positioned behind Officer Flagg on the driver's side of the car, deployed his pepper spray.

Mr. Wright claims that his failure to provide his right hand and allow Officer Flagg to

fully restrain him was caused by an inability to move freely due to the staples in his stomach

from a recent surgery. However, the officers were not aware of this alleged limitation. The

staples, colostomy bag, and bandages were not visible to the officers. Mr. Wright claims that he

was trying to explain to the officers that he had a colostomy bag, but he said only, "I got a

what's-name-on," and "you are hurting my arm." (ECF #28-1, Flagg Body Cam). He did not

actually communicate any information about his surgery, staples, or the bag to the officers before

he was tased and pepper sprayed. Further, the audio from both officers' body cameras reveals

that after he was removed from the car, Mr. Wright admitted to the officers that he had been

reaching down during the encounter, despite repeated orders and warnings to show his hands.

When, after he was out of the car and under control, the officers expressed that he they had been

afraid he had been reaching for a gun, Mr. Wright stated "all I was reaching for is my phone, sir."

(ECF #27-1, Williams Body Cam at 2:30-2:39; ECF #28-1, Flagg Body Cam at 2:45-2:50).

Once he had been tased and sprayed, Mr. Wright complied with the officers and removed

himself from the car. He then communicated that he had a colostomy bag and the officers helped

him up and to a resting spot at the back of the car, and tried to assist him with rinsing off the

pepper spray. A medical unit came and transported him to the hospital. The doctors there sought

to do a scan to ensure that his sutures were not damaged during the encounter, but Mr. Wright refused treatment. The officers also unsuccessfully tried to convince him to submit to the scan. He was then transported to the police station for processing.

Mr. Wright was eventually charged with multiple traffic offenses including driving without a license, suspended license, failing to signal, and failure to activate his headlights. He denies that there were any grounds for any of these traffic charges. Mr. Wright was also charged with obstructing official business and resisting arrest, as well as criminal trespass for stopping his car in the driveway and remaining there without permission. There were no drugs or weapons found in the car or on Mr. Wright's person, however there were multiple cell phones inside the vehicle. Mr. Wright posted bond at the Euclid jail sometime between 11:00 p.m. and midnight. Before being released he was taken downtown to the Cuyahoga County Jail and scanned to "see if [he] had anything in his body." (Wright Depo. PageID #501-502, 505). Nothing was seen on the scan. He was eventually released just before 4:00 a.m. Approximately seven months later, on June 21, 2017, all charges were dropped. No charges were ever re-filed, and the statute of limitations on all prior charges expired on November 4, 2018. .

### Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the

-6-

higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does "not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

[i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Analysis**

I. Federal Claims

All of Mr. Wright's federal claims have been brought pursuant to 42 U.S.C. §1983. In order to prevail on a claim brought under §1983, a plaintiff must establish by a preponderance of the evidence that a person acting under the color of law deprived him of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). A violation of §1983 is actionable only if it is intentional or knowing. A negligent or reckless deprivation of a right is not sufficient to create liability. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

Local governments may not be sued under §1983 for injuries caused by their employees or agents under the theory of respondeat superior. *See Monell v. Dept' of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality or other local government may be liable for damages under §1983 only when the injury is caused by the municipality's implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. In order to prove such a claim, a plaintiff must be able to show: (1) the existence of a clear and persistent pattern of similar violations; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that deliberate indifference in the failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, at 231 (2009)  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal citations omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Qualified immunity under federal law is applied using a two-part test. *Id.*  Courts may consider these two parts in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  First, courts must determine whether the alleged acts violate a constitutional right.  Second, the court must determine whether at the time of the actions, the constitutional right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); see also, *Saucier v. Katz*, 533 U.S. 194 (2001).  The determination must be based on what a reasonable officer would believe or understand under the circumstances given what was known to the officer. *Fox v. DiSoto*, 489 F.3d 227 at 236 (6th Cir. 2007).  The standard is objective, and must not be applied using hindsight unavailable to the officers at the time the actions were taken. *Id.*  Further, when determining whether a right was clearly established at the time of the incident, that right must be defined with specificity. *City of Escondido v. Emmons*, 139 S. Ct. 500  (Jan. 7, 2019).  Also, when making this determination, a court must take into account "that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id.*  at *503 (citing *Kisela v. Hughes*,

584 U.S. at ---. ).  In order to take a case outside the protection of qualified immunity, a plaintiff needs to "identify a case where an officer acting under similar circumstances" was held to have violated the plaintiff's constitutional rights.  *Id.* at 504 (citing *District of Columbia v. Wesby*, 583 U.S. —, 138 S. Ct. 577, 199 L. Ed. 2d 453, at 468 (2018)).

A.  <u>Unlawful Search and Seizure (Count One)</u>

Plaintiff argues that his first cause of action for Unlawful Search and Seizure incorporates claims for both Excessive Force and False Arrest.

1.  <u>Excessive Force</u>

Courts evaluate claims for excessive force under the Fourth Amendment and apply an objective reasonableness standard.  *See Graham v. Connor,* 490 U.S. 386, 395 (1989); *Morrison v. Bd of Trs. Of Green Twp.*, 583 394, 401 (6th Cir. 2009).   The Court should balance the nature and quality of the intrusion on a plaintiff's Fourth Amendment rights against the government's interests, and determine "whether the totality of the circumstances justifies a particular sort of seizure."  *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006).   The analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  The perspective considered should be that of a reasonable officer on the scene.  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902-903 (6th Cir. 1998).

Mr. Wright claims two instances of excessive force:  the brandishing of firearms when officers approached the vehicle, and the use of a taser and pepper spray to subdue him before he was removed from his vehicle.   The officers are entitled to qualified immunity for both of these

-10-

displays of force.

a. Brandishing Weapons

There is no dispute that when the officers in this case approached Mr. Wright's vehicle, they initially had their weapons drawn. Officer Williams stated that he saw Mr. Wright reaching repeatedly down toward the center console as he approached. Officer Flagg says that he drew his weapon when he saw the car's reverse lights come on as the officers approached. Mr. Wright says that he was texting his girlfriend and that he did put the car in reverse momentarily when he saw Officer Williams approach with a gun because he did not recognize him as a police officer. There is also no dispute that both officers holstered their weapons as soon as Plaintiff turned off his vehicle and initially raised his hands.

Before approaching the car, both officers had suspected that Mr. Wright was involved in drug activity because he had just come from a house that was under surveillance for reported drug activity. He pulled into the driveway of that house, stayed in the car and spoke for only about a minute to a person who was at the house, out of the sight of the officers. He was also driving a rental car, which is a common practice of people who traffic in drugs in order to prevent their identification. Thus, when the car pulled into a different driveway, the officers had a reasonable suspicion that Mr. Wright have been involved in a drug transaction, and they had justification to perform an investigatory stop.

The Sixth Circuit has stated that, based on their training, when officers reasonably suspect that a person is suspected of drug activity, they may also reasonably suspect that the person is in possession of a weapon. Consequently, even on an investigatory stop, the officers may approach with weapons drawn or use other intrusive force until their safety is established. *See U.S. v.*

-11-

*Richardson*, 40 F. App'x 7, 13 (6th Cir. 2002). Thus, the officers in this case, having an objective reason to believe that Mr. Wright may have been involved in drug activity, also had a reasonable belief that he may be in possession of a weapon. Further, Officer Flagg, seeing the reverse lights come on as the officers approached had reason to believe that was about to reverse the car into the path of the two officers, and was, therefore, justified in drawing his weapon for protection. Therefore there was no constitutional violation committed when the officers temporarily drew their weapons as they approached Mr. Wright's vehicle. It is undisputed that both officers reholstered their weapons as soon as Mr. Wright showed his hands on their approach.

Even if the drawing of weapons was not initially warranted, the officers would still be entitled to qualified immunity for this display of force. The law permits officers to connect suspected drug activity to a likelihood that a suspect that may be armed. Officers may also draw their weapon if they believe a car is attempting to run them over. Therefore, because the officers had a reasonable belief that Mr. Wright may have been involved in drug activity, and Mr. Wright admittedly placed the car in reverse as the officers approached the vehicle, the a reasonable officer would have believed that his actions did not violate any of Mr. Wright's constitutional or other rights.

Plaintiff cannot point to any case where an officer acting under similar circumstances was held to have violated the plaintiff's constitutional rights. *Emmons*, 139 S. Ct. at 504 (citing *District of Columbia v. Wesby*, 583 U.S. —, 138 S. Ct. 577, 199 L. Ed. 2d 453, at 468 (2018)). In fact, the only case cited by Plaintiff in support of his position actually supports the defendants argument for qualified immunity. In that case the Eleventh Circuit held that it was constitutionally acceptable to brandish a weapon in order to gain control of an investigatory

-12-

scene, so long as the use was only as long as necessary to ensure the safety of those at the scene. *See, Croom v. Balkwill*, 645 F.3d 1240, 1253 n. 17 (11th Cir. 2011)(the Court found no constitutional violation when Plaintiff alleged officer pushed and held her, an elderly woman, in a bathing suit, to the ground and that she heard a gun click as they ran an initial sweep of the house during a search for drugs).   As Plaintiff has cited no case in which officers in a similar position were found to have violated a suspect's rights by brandishing their weapons, the officers in this case are entitled to qualified immunity.

b.  <u>Use of Taser and Pepper Spray</u>

Similarly, the officers are entitled to qualified immunity in connection with their use of the taser and pepper spray during their encounter with Mr. Wright.   Although it turned out that Mr. Wright had no weapons in the car, the Court must view this encounter from the perspective of the officers on scene at the time, and not with the benefit of hindsight.   At the time of the encounter, there was no way for the officers to know that Mr. Wright did not have a weapon and did not pose a threat to their safety.

Upon approaching the vehicle, the officers saw Mr. Wright reaching toward the middle console and saw him briefly, at least, put the car into reverse.   Even after he initially showed his hands, Mr. Wright admits that he moved his right hand back toward the center console, obstructing his hand from the officers view despite repeated commands by the officers that he show his hands.   In his brief, Mr. Wright claims that he was using his right hand to push up off the console in order to try to comply with Officer Flagg's commands as the officer attempted to remove him from the car. Even if this were true, Mr. Wright did not communicate this to the officers and they had no way of knowing why he was refusing to follow their commands or what

-13-

he was doing with his right hand. Further, this explanation does not match Mr. Wright's explanation to the officers at the scene. At the scene, after he was removed from the car, Mr. Wright told the officers that he had been reaching for his cell phone. Either way, he does not dispute that he moved his right hand toward the center console and out of the view of the officers, as Officer Flagg was attempting to restrain him, despite repeated orders to show his hands. Mr. Wright also does not dispute that because of his limited mobility he was not able to follow commands by Officer Flagg as that officer was trying to cuff him and get him safely out of the car. He did not tell the officers that he had a medical issue preventing him from following directions, and the officers, at the time, were completely unaware of any such disability. Therefore, Mr. Wrights resistence and failure to follow commands appeared to the officers to be an attempt to struggle and avoid removal from the car, and could reasonably have been perceived as an attempt to reach a weapon.

Officers must react to unfolding circumstances with a quick assessment of the situation and must take preventive actions to ensure their safety and the safety of others. They have no duty, when faced with non-compliance to step back or give a suspect time to explain the reason for their resistence or make an affirmative determination of actual danger. *See Estate of Edwards v. United States*, 38 F.3d 1215 (6th Cir. 1994). If there is a reasonable perception of danger, officers are entitled and expected to react as if that danger is real. *See Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015). Under the undisputed facts of this case, the officers had a reasonable belief that they were in danger and they reacted in a measured manner under the circumstances.

Plaintiff has cited no cases that would show that Mr. Wright's "clearly established" rights

-14-

were violated during this encounter with the City of Euclid's Police Officers. His brief in opposition to the Motion for Summary Judgment cites only to cases recognizing that there is a clearly established right for "people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jassamine County Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006)(finding question of fact whether hitting suspect with a stick after she had already been pepper sprayed and was incapacitated on the ground was excessive force); *see also, e.g., Griffith v. Coburn, 473 F.3d 650 (6th Cir. 2007)(*suspect refused to submit to handcuffs but did not reach for anything or otherwise indicate he was a threat); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 253 (6th Cir. 2010)(suspect claims to have been slammed into a car and handcuffed for refusing a breathalyzer - was out of the car and otherwise complying with all officer requests). As stated above, the assessment of whether there is a safety risk is not one to be made based on the facts discovered after the incident, but must be viewed from the perspective of a reasonable officer on the scene. The officers in this case were approaching the car of a person they suspected had participated in a drug transaction. Despite repeated commands to show his hands, the Plaintiff kept obstructing the view of his right hand by reaching for the center console of the vehicle. He also resisted attempts by Officer Flagg to handcuff him and remove him from the car. Although he claims to have had a medical condition rendering him unable to comply, the officers were unaware of this condition. The police had a reasonable fear that the Plaintiff could have been reaching for a gun, and they acted accordingly.

The Plaintiff has not cited, and this Court is unaware of any controlling cases that have established a constitutional violation occurred when non-lethal force was used to obtain control over the suspect who reasonably appeared to pose a safety risk to officers. More specifically no

-15-

cases have been brought to the Court's attention that would have informed officers that it was a constitutional violation to use non-lethal force used against a suspect who, after being commanded to show his hands, failed to show his hands, continued reaching within the car for something unknown, and struggled with the officers. In fact, the first case cited by the Plaintiff in support of the proposition that no gratuitous violence can be used against people who pose no threat to the police, actually condoned the use of pepper spray against a suspect who is refusing to make themselves visible and submit to police commands. *Shreve v. Jessamine Cnty*, 453 F.3d 681, 688 (6th cir. 2006). Therefore, the Defendants in this case are entitled to qualified immunity on Plaintiff's excessive force claims.

### 2. False Arrest (Count One)

The Constitution allows a police officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed, is committing an offense, or is about to commit a an offense. *Dietrich v. Borrows*, 167 F. 3d 1007 (6th Cir. 1999). Probable cause to arrest requires "only the probability, and not a prima facie showing of criminal activity." *Illinois v. Gates*, 464 U.S. 213, 235 (1983). Probable cause is an objective standard and is not reliant on the actual intent or belief of the officer, himself. Plaintiff claims that his arrest was made without probable cause. "[A]ny arrest made without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

For purposes of this Motion, the Court accepts Plaintiff's view that the officers did not have probable cause to arrest Mr. Wright based on his brief visit to the house they were surveilling. The Court also accepts that there is a dispute of fact as to whether Mr. Wright committed any traffic violations between leaving that house and pulling into the driveway where

-16-

the arrest occurred. The officers did, however, at the time of their approach to the vehicle, have reasonable suspicion to conduct an investigatory stop. As set forth above, prior to their encounter with Mr. Wright, they witnessed him pull into the driveway of a suspected drug house in a rental vehicle, sit in the driveway for approximately one minute talking with an occupant of the house, then shortly after pull into another driveway (not his own), reach down toward his console, and then put his car in reverse when he saw them approach. Though none of these actions are proof of any illegal activity, they are all factors that are known to coincide with illegal drug activity and they create a reasonable suspicion that Mr. Wright may have been involved in a drug transaction.

Based on this reasonable suspicion, the officers approached the car to investigate. They directed Mr. Wright to put his hands up and keep them in sight. He did not comply. Rather he repeatedly moved his right hand out of sight and down towards the center console. When Officer Flagg tried to restrain him in order to safely remove him from the car, Mr. Wright admittedly failed to follow directions, and pulled away from the officer, resisting restraint. This failure to follow commands, and resistance to the officer's attempts to safely secure Mr. Wright for the duration of the investigatory stop provided grounds for arrest on a charge of obstruction of official business. Mr. Wright claims that he was unable to comply due to his medical restrictions but did not articulate this to Officer Flagg. Officers do not have to accept a defendant's denial of culpability or other articulation of defenses when determining whether there was probable cause to arrest.

Further, although Mr. Wright now argues that he was using the console to push himself up because he was restricted by the colostomy bag and the staples in his stomach, he told the

-17-

officers at the scene that he was reaching for a cell phone, which calls his defense to his actions into question. Mr. Wright also claims that the bodycam video shows that he was not resisting, but that is not an accurate characterization of the video. What the video does clearly show is the officers telling him to stop reaching and to show his hands repeatedly and with escalating urgency.

Based on the totality of the circumstance as known to the officers, most especially Mr. Wright's failure to follow directions and the resistence he provided when Officer Flagg tried to remove him from the car, there was probable cause for his arrest for obstruction of official business. R.C. 2921.33; *Harris v. U.S.* 422, F.3d 322, 329 (6th Cir. 2005); *Ohio v. Kates*, 169 Ohio App.3d 766 (2006). Because there was probable cause for his arrest on this claim, there is no constitutional violation. As there was no constitutional violation, the officers are entitled to qualified immunity for any mistakes of law or fact that may have played into their decision to arrest Mr. Wright.

B. Malicious Prosecution (Count Two)

Mr. Wright claims that the Defendants in this case violated his right to be free from malicious prosecution in violation of the Fourth and Fourteenth Amendments, and in violation of 42 U.S.C. §1983. The claim of malicious prosecution is distinct from a claim of unlawful arrest. In order to maintain a claim for malicious prosecution, a plaintiff must prove the following: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the prosecution; (3) the plaintiff was deprived of liberty beyond the initial seizure; and, (4) the proceeding resolved in the plaintiff's favor. *See, e.g., Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015).

-18-

Ordinarily, an officer cannot be held liable for malicious prosecution if he did not make the decision to prosecute. *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002).

Defendants do not, for purposes of this motion dispute that the Defendants in this case made, influenced, or participated in the decision to prosecute Mr. Wright. They do, however, dispute all three of the additional elements needed to prove the malicious prosecution claim. The court has already found that the officers involved in this case had probable cause to arrest Mr. Wright for obstruction of official business. Plaintiff makes general allegations that the officers fabricated evidence, but points to no evidence of fabrication or falsification relating to the this charge. Further, the record supports the officers' statements with regard to the charge. Mr. Wright's seizure and arrest, as well as any further restriction on his liberty in the form of processing time prior to his release on bond, and any pretrial restrictions implemented as part of his bond conditions were the direct result of this charge.[2]

Plaintiff contends that his malicious prosecution claim survives even a finding of probable cause for arrest on the resisting/obstruction charges because there was allegedly no basis for the traffic offenses and trespass charges levied against him, and a malicious prosecution claim must establish probable cause for each crime charged against the plaintiff. The record, however, shows that the Officer Williams interviewed the owners of the property where Mr. Wright parked his car before the incident, and they denied knowing him or giving him

---

[2]
The time Mr. Wright spent at the hospital cannot be counted as a restriction on his liberty resulting from the post-arrest legal proceedings. He complained to the officers at the scene that during the arrest he had strained the staples in his stomach from a recent surgery, and that he had continued burning from the pepper spray. The officers were obligated under the circumstances to take Mr. Wright to the hospital to ensure that he did not suffer any further harm.

permission to be on their property. (ECF #34-2 Ex. J, Ex. 1 - Williams Aff, and Video of Mecoli Interview). This provided probable cause for the trespassing charge.

Further, even if the Court accepts that there are questions of fact as to the validity of the traffic offenses Mr. Wright was cited for, he was not arrested, or otherwise deprived of his liberty, as a result of those charges. A deprivation of liberty, for purposes of a federal malicious prosecution claim requires a showing that the plaintiff had his freedom of movement restricted or limited in some way protected by the Fourth Amendment, as a result of criminal charges. The Sixth Circuit has held that traffic citations do not implicate a Fourth Amendment seizure and, therefore, cannot be the basis for a federal malicious prosecution claim. *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999). Had Mr. Wright faced only these traffic citations, there is absolutely no evidence that he would have been detained past the initial seizure. Therefore, because there was probable cause for the charges that caused the temporary loss of Mr. Wright's freedom of movement, the Defendants are entitled to summary judgment on his claim of malicious prosecution.

C. Failure to Intervene (Count Three)

As discussed above, both officers had a reasonable justification for the use of force, and both are entitled to qualified immunity on the excessive force claims. Therefore, neither can be liable on a claim for failure to intervene for failing to protect Plaintiff from each other's use of force. Plaintiff's claim for failure to intervene has no merit.

D. Extended Detention (Count Four)

Plaintiff claims that he is also entitled to relief for the unnecessary extension of detention following his posting of bail. He alleges that after posting bond, he was improperly transferred

-20-

downtown and was subjected to a full body scan. He contends that this extension of detention was caused when Officers Flagg and Williams designated his case as a "drug investigation," which tags the suspect for additional searches at the jail. The Defendants in this case cannot be liable for any extension of detention that occurred once Mr. Wright's case was turned over from the Euclid Police Department to the Cuyahoga County Jail. There has been no admissible evidence presented by the Plaintiff that would tie the Defendant officers to the decision to transport Mr. Wright to Cuyahoga County, or to further detain or search him at that location. It is undisputed that following the initial intake, custody of Mr. Wright was transferred to Cuyahoga County Jail and, from that point forward, none of the Defendants retained any control or authority over when Mr. Wright was to be released from jail. Further, the testimony of the Cuyahoga County Jail Officials indicates that Mr. Wright's transfer to downtown was made for the purposes of ensuring that he received a medical evaluation related to his recent surgery. (ECF #34-2 Ex. H, Jaenke Depo. at 49-50; Williams Depo. at 24-25; Flagg Depo. at 150-152). There is no evidence that the Defendants in this case had any control over the alleged extension of Mr. Wright's detention and this claim, therefore, cannot stand.

E. Monell Claims (Count Five)

A municipality or other local government may be liable for damages under §1983 only when the injury is caused by the municipality's implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. However, these claims are derivative of the claims against the individual officers. The Supreme Court has held that if the officers inflicted no constitutional injury on a person, then the city they work for cannot be liable to that person for damages. *DeMerrell v. City*

*of Cheboygan*, 206 Fed. Appx. 418, 429 (6th Cir. 2006)(citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(per curiam)).   As Mr. Wright has failed to establish that he suffered a constitutional injury at the hands of Officers Flagg and Williams, his claim against the City is, likewise, without merit.


II. State Claims

The Defendants argue that they are entitled to statutory immunity with regard to the Plaintiff's state claims.  Ohio Revised Code Chapter 2744 grants immunity to political subdivisions and to employees of political subdivisions for actions arising out of the course and scope of their employment. *Walsh v. Village of Mayfield, 11th Dist. No. 923309, 2009-Ohio-2377, at ¶11; Fabrey v. McDonald Village Police Dept.* , 70 Ohio St.3d 351, 357 (1994).  The City itself is immune from suit unless one of several enumerated exceptions apply.  Plaintiff concedes that he cannot show that any of these exceptions apply under the facts of this case.  The City, therefore, is immune from liability for any state claims.

The statute also provides immunity for officers unless one of the following exceptions apply:

> (1) the employee's acts or omissions were manifestly outside the scope of their employment;
>
> (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) civil liability is expressly imposed by a section of the Revised Code.

Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

There is no evidence that the Defendants in this case were acted outside the scope of their

employment and there is no evidence that the officers acted maliciously, in bad faith, or in a wanton or reckless manner in connection with the decision to use force, or in their decision to arrest Mr. Wright. Further, Plaintiff has not claimed that the officers are subject to liability under any of the relevant sections of the Revised Code. Therefore, they are entitled to immunity under R.C. 2744.

Even if they were not entitled to immunity, however, the Plaintiff's state law claims would fail on the merits. As set forth above, the officers in this case acted in an objectively reasonable manner and in good faith to protect themselves from a perceived risk. They arrested Mr. Wright for resisting arrest and obstruction of justice after he admittedly failed to comply with orders, and pulled away from Officer Flagg as he was trying to isolate his hands and remove him from the car. The reasons for Mr. Wright's resistance were not known to the officers and are could not be taken into account by the officers during the encounter. In addition, under Ohio law a voluntary dismissal of charges by the prosecutor does not equate to a termination of charges in the Plaintiff's favor. *LeFever v. Ferguson*, 956 F.Supp.2d 819, 837 (S.D. Ohio 2013). There can be no liability for malicious prosecution against the officers in this case because they had probable cause to initiate the charges against the plaintiff.

The intentional infliction of emotional distress claims would also fail on the merits. Under Ohio law, Plaintiff must present evidence that shows that: (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was extreme and outrageous, went beyond all possible bounds of decency, and can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and

-23-

(4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure. *Gebers v. Commercial Data Ctr., Inc,* 47 F.3d 1168, 1995 WL 9262, at *3 (6th Cir. Jan. 10, 1995) (unpublished)(citing, *inter alia, Pyle v. Pyle*, 463 N.E.2d 98 (Ohio Ct. App. 1983); *Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 453 N.E. 2d 666 (Ohio 1983). The facts in this case do not support such a claim.

The Ohio Supreme Court has emphasized that liability "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Yeager,* 453 N.E.2d at 375 (quotes and citation omitted). The conduct complained of by Plaintiff is in no sense egregious enough to meet this standard. As a matter of law, a police officer cannot be liable for intentional infliction of emotional distress for the understandable distress that may accompany an arrest and all of the attendant procedures and consequences, when the arrest was lawful and was based upon probable cause, as this one has been determined to be.

Moreover, Plaintiff has not offered any evidence that he was emotionally injured, much less that his injuries were severe and debilitating. In defining serious emotional distress, the Ohio Supreme Court stated:

> By the term "serious," we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. . . .
> A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.

-24-

*Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983) (citations omitted).

Plaintiff cites no evidence that would show that he is suffering from the requisite level of psychological trauma, or that he has been treated for stress or any other emotional injury allegedly arising out of his arrest.  Defendants are, therefore,  entitled to summary judgment on this claim.

### Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. Pursuant to Fed. R. Civ. Pro. 56, Judgment is entered in favor of the Defendants on all claims.  IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: May 7, 2019

-25-